THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. MARY S. PARSONS.

1. EMINENT DOMAIN — *Measure of Damages.* In a proceeding to recover damages for the right-of-way appropriated to the use of a railroad company, the actual cash market value (at the time of the appropriation) for the property actually taken must be allowed.

2. INSTRUCTION, *Not Erroneous.* Where damages are claimed by the landowner for lots or land wholly taken for the right-of-way of a railroad, and the court instructs the jury that "it is the fair market price of the land in question that is to be ascertained in estimating the damage;" that, "in considering the market value, the jury will take into consideration the actual state of the market at the time of the taking;" that, "in determining the value, the same considerations are to be regarded as in the sale of property between private parties at the time of the taking;" and that "the market value must be the actual and not the conjectural or imaginary value," such instruction is not erroneous or misleading.

3. EVIDENCE — *View by Jury.* The evidence which the jury may acquire from making a view of the premises is not to be elevated to the character of exclusive or predominating evidence. (*City of Topeka v. Martineau,* 42 Kas. 387.)

4. INSTRUCTIONS, *When Harmless.* Where instructions are given which, under some conditions, might be misleading, they become wholly immaterial, if it conclusively appears from the special findings of the jury that the verdict rendered is not influenced or controlled thereby.

*Error from Scott District Court.*

CONDEMNATION PROCEEDINGS by the *Railroad Company* against *Mary S. Parsons.* Defendant appealed to the district court, where she had judgment for $3,585.71. The company brings the case here. The opinion states the facts.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

1. The court erred in not confining the jury to a consideration of the real, actual cash market value of the property. *Brown v. C. R. Rly. Co.,* 18 N. E. Rep. 284–286; *J. &. S. E. Rld. Co. v. Walsh,* 106 Ill. 253, 257; *Kiernan v. C. S. F. & C. Rly. Co.,* 123 id. 188, 189, 195; *Kountz v. Kirkpatrick,* 72 Pa. St. 376.

2. The court erred in refusing to instruct the jury that they might take into consideration their own view of the premises and the result of their own information and knowledge. *Kiernan v. C. S. F. & C. Rly. Co.,* 123 Ill. 188, 189 195; *C. K. & W. Rld. C. v. Drake,* 46 Kas. 568, 569; *Head v. Hargrave,* 105 U. S. 45.

3. The court erred in not confining the jury to giving damages simply for the value of the lots taken or partly taken *Wilcox v. St. P. & N. Rld. Co.,* 35 Minn. 439, 441.

*Morse & Hubbell,* for defendant in error:

Plaintiff in error lays down the following as the rule of estimating damages: "The real and actual value of the land did not change, and this real and actual value could only be ascertained by the jury considering the value of the land before the excitement and after the excitement." We do not think that plaintiff in error was entitled to such an instruction upon the evidence, even if it is a correct rule of law. Plaintiff in error was not prejudiced by the court refusing to give such an instruction. The rule, as laid down in *Brown v. C. R. Rly. Co.,* 18 N. E. Rep. 285, is:

"Its fair cash market value, if sold in the market under

ordinary circumstances for cash, and not on time, and assuming that the owners are willing to sell, and the purchaser willing to buy."

We do not think the rule laid down in *Kountz v. Kirkpatrick*, 72 Pa. St. 376, applies to the case at bar. No attempt was made in this case to show any "unlawful means" to have been used to raise false values before the condemnation. The case cited shows a combination to control the oil market and raise prices, but there was no such combination in the case at bar.

Counsel for plaintiff in error claim that "the court erred erred in refusing to instruct the jury that they might take into consideration their own information and knowledge." It seems to us that the court rightly refused the instruction. As the inspection of the premises by the jury was at most but one means of bringing evidence before them — letting the thing itself testify — we see no reason why it should be emphasized, or more particularly pointed out to the jury than the evidence of any other witness. *City of Topeka v. Martineau*, 42 Kas. 390, 391. See, also, *Craver v. Hornburg*, 26 id. 97.

In this last case, the court says: "A jury has a right to avail itself of such general knowledge as all men possess, but not to any knowledge derived from employment in any kind of business." We think values of real estate are not such matters as can be excepted from this rule, and that the court rightly refused the instruction asked for upon this point. See *U. P. Rly. Co. v. Shannon*, 33 Kas. 446; *C. K. & W. Rld. Co. v. Drake*, 46 id. 569.

Counsel claim that "the court erred in not confining the jury to giving damages simply for the value of the lots taken or partly taken."

Our first answer to this is that, if the court did err in this, it was in no way prejudicial to plaintiff in error. We find, from an examination of the answers made by the jury to the special findings asked by defendant in error, and to the spe-

cial findings asked by plaintiff in error, that the items of damage allowed were only for the lots actually taken, and nothing was allowed in fact for damage either to half blocks or lots all of which were not taken. The amount so allowed in the special findings was 50 cents more than the amount of the general verdict, the amounts in these answers footing up $3,184.50, while the amount allowed for damage in the general verdict was $3,184.

Our second answer to this proposition is, that under the issues as joined on the pleadings as disclosed by the record, this objection cannot arise. The defendant in error pleaded in her amended petition damage to half blocks as one tract. The plaintiff in error filed its answer to this amended petition in the form of a general denial. Upon this issue, so formed, this case went to trial. The plaintiff in error, by thus failing to demur, or make such an objection as is equivalent to a demurrer, waived the question; and, under such an issue, this evidence as to half blocks, and the instructions thereon, were proper. The plaintiff in error was given more than it was entitled to in the court's instructions numbered 6, 10, 11, and 12. The court gave the plaintiff in error all it was entitled to, by submitting the question as to whether the half blocks did constitute one tract to the jury, in the instructions just referred to.

If the court should hold that our previous contentions on this point are not well taken, we submit still further, that under all the facts in this case, the lower court did not err in trying the case on the half-block theory. In this case it seems to us that the limit cannot be fixed within the bounds of the half blocks. *K. C. & T. Rly. Co. v. Splitlog*, 45 Kas. 72. As to the holdings of this court upon the unity of tracts, see *Reisner v. Depot & Rld. Co.*, 27 Kas. 382; *A. & N. Rld. Co. v. Gough*, 29 id. 94; *K. C. E. & S. Rld. Co. v. Merrill*, 25 id. 421; *St. L. Ft. S. & W. Rld. Co. v. McAuliff*, 43 id. 185. See, also, *Cox v. M. C. & Ft. D. Rld. Co.*, 41 N. W. Rep. 476; *Todd v. K. & I. Rld. Co.*, 78 Ill. 532.

The opinion of the court was delivered by

HORTON, C. J.: This was an appeal in the court below by Mary S. Parsons from condemnation proceedings instituted by the Chicago, Kansas & Western Railroad Company to lay off its route, side tracks, depot grounds, etc. In her petition filed in the court below, she claimed damages in the sum of $17,-650, with interest from May 7, 1887. Mrs. Parsons owned 25 to 30 acres of land lying north of Eastman's addition to Scott City, in Scott county, which was separated from the original site of Scott City by one tier of blocks of that addition. In 1886, she had this tract surveyed and platted into blocks, half blocks, fractional blocks and lots, as an addition to the city. The lots were 25 by 100 feet, and fronted east and west. Her plat was filed for record in the office of register of deeds in Scott county on March 29, 1887. The railroad ran through this (Parsons's) addition to Scott City, and appropriated 120 entire lots and portions of 21 other lots. Notice of condemnation proceedings was given March 24, 1887, but the report of the commissioners was not filed until May 7, 1887. The commissioners appraised the value of the property taken and assessed the damages at $3,087. Upon the trial the jury returned a verdict for Mrs. Parsons, assessing her damages at $3,184, and $401.71 as interest, aggregating $3,585.71. The railroad company complains of the rulings of the trial court and the judgment rendered upon the verdict.

It is contended that the court below erred in not confining the jury to a consideration of the real, actual cash market value of the property. It is claimed that there was an unusual excitement or "boom" in the spring of 1887, at Scott City, as in other portions of Kansas, and that speculative and inflated prices were prevalent for a short time only; that under the instructions of the court, as the property was condemned during this period of unnatural inflation, the actual cash market value of the lots taken was not fully considered by the jury. This court has time and again ruled, in proceedings to recover damages for the right-of-way appropriated to

the use of a railroad company, that "a fair way of determin-
ing the injury is to determine the fair market
value of the premises before the right is set
apart, and then again just after, and the differ-
ence will be the true measure of damages." (*Railway Co. v.
Haines*, 10 Kas. 439; *Railroad Co. v. Blackshire*, 10 id. 477;
*Railroad Co. v. Wilder*, 17 id. 239; *Railroad Co. v. Ross*, 40
id. 598.) "Evidence of the value of lots or land condemned
for railroad purposes before and after the location of the rail-
road is competent." (*Railway Co. v. Allen*, 24 Kas. 33.) Of
course, the damages assessed must be only such as are direct,
special, and approximate. (*Railroad Co. v. Kuhn*, 38 Kas. 675,
and authorities there cited.) But, within all these rules, we
cannot say that the instructions given were misleading or
erroneous, or that the instructions refused ought to have been
given, considering those actually given.

*1. Eminent do-
main — meas-
ure of damages.*

Among other things, the court instructed the jury that

"It is the fair market price of the land in question that is
to be ascertained in estimating the damage. The market
value of a thing is the value, the rate, at which the thing is
sold when placed upon the market. To make a market, there
must be buying and selling, a purchase and sale; and if you
are satisfied from the evidence that there was, on the 7th day
of May, 1887, a market value for the land in and near the
land in question, you must be governed by it; and if the evi-
dence is doubtful or conflicting as to the market price, and
witnesses vary as to their statements, you should adopt that
which best accords with the proof in the case. And in con-
sidering the market value of said real estate, the jury will
take into consideration the actual state of the market at the
time of the appropriation."

In this instruction, value and price are treated as equiv-
alents. The phrase "market value" is the best, however,
and it is used most frequently in the instructions. The pri-
mary meaning of value is worth, and "price" is not really a
synonym of value, but frequently "market value" and "mar-
ket price" are used alike.

Again, the court instructed the jury that

"In case they should find with reference to any of such half

blocks, that the same or a portion thereof owned by plaintiff at the date of the appropriation constituted one entire tract or parcel, which was used and was suitable to be profitably used for a single purpose, and that only a part thereof was actually taken, the proper measure of damages would be the difference between the fair market value of such entire tract 'or parcel just before taking by defendant, and the fair market value of the residue not taken of such entire parcel just after such taking."

Further, the court instructed the jury that—

"If they found the residue not taken, or any part of such residue, constituted a distinct piece or parcel of property, then the proper measure of damages would be the fair market value at the time of such appropriation of the portion of said half block which was actually included in the appropriation, and in that case they were not to consider any injury done by such taking to any contiguous property outside of the limits of such appropriation.  .  .  .  When the whole of a lot or parcel of land is taken and appropriated by condemnation proceedings, the fair market value of the land at the time of the taking is the true measure of damages.  In determining the value of land appropriated, the same considerations are to be regarded as in the sale of property between private parties at the time of the appropriation."

The court also instructed the jury as follows:

"The building of railroads by corporations is a legitimate enterprise for the purposes of commerce and trade, and the law gives to such corporations the right to take private property for the use and right-of-way of the railroad; but when private property is thus taken, the owners of such property must be fairly compensated for the loss of the use of such property so taken; and in estimating the compensation, the estimates of values must be made on the fair market value of such property at the time the same is appropriated, and these market values must be the actual and not the conjectural or imaginary, but is the fair prices for which such property actually is selling at the time."

It is unfortunate, perhaps, for the railroad company, if payment for its right-of-way only is considered, that its exigencies demanded the construction of its road at the time the property in controversy was condemned, in April and

May, 1887; but if at that time, on account of the proposed construction of railroads to Scott City, the real estate in and around that city greatly advanced in value, Mrs. Parsons was entitled to the benefits thereof. Private parties who invested in real estate or who were compelled from public necessity to purchase real estate in the towns or cities during the "boom period" in this state were required to pay much higher values than if they had waited six months or a year for the feverish excitement to be abated. The writer of this vividly remembers that, as an investment, he purchased nine lots for $3,000 in an addition to the city of Topeka about that time. He congratulated himself on his great bargain, and expectantly supposed that in the near future his lots would greatly advance in value. Unfortunately the reverse was the result. The investment is permanent to the amount of one-half or two-thirds of the purchase price, as the lots will probably never sell for more than one-third paid for them. The probability even of a future sale for one-third is far distant. But at the time the writer supposed, with others, that he was only paying the real, actual cash market value of the property. He really thought he was fortunate in his investment; yet the owner of that addition sold very many lots at similar prices for cash, or for part cash, the balance secured by mortgage. The lots in that addition could not have been taken under the rule of eminent domain at less value than they were actually selling for in cash in the market; although in a few months afterward the "boom period" passed, and the lots were "stale, flat and unprofitable" at any price. Mrs. Parsons was only entitled to recover for the property taken its fair cash market value, if sold in the market by her under ordinary circumstances for cash, and not on time, and she were willing to sell, and a purchaser were willing to buy.

"The market value means the fair value of the property, as between one who wants to purchase and one who wants to sell; not what could be obtained for it under peculiar circum-

stances when a greater than its fair price could be obtained, not its speculative value; not a value obtained from the necessities of another; nor, on the other hand, is it to be limited to that price which the property would bring when forced off at auction under the hammer. It is what it would bring at a fair public sale, when one party wanted to sell and the other to buy." (*Railroad Co. v. Fisher*, 49 Kas. 17.)

In the case of *Kountz v. Kirkpatrick*, 72 Pa. St. 376, the article sold was petroleum. After the contract of sale, but before the date of delivery, "a stimulated market price was created by artificial and fraudulent practices of a 'combine,' to keep petroleum out of the market, and thereby create a scarcity, and consequently to enhance the price." The price or value in such a case is quite different from the facts disclosed in this case, even if Scott City was inflicted with a "boom" in the spring of 1887. In this case, the court confined the jury "to the fair market value of the property at the time it was taken," and the court expressly instructed the jury that the market value "must be the actual, and not the conjectural or imaginary value." The court also stated that "the market value of property is the value, the rate at which the property is sold when placed upon the market."

2. Instruction, not erroneous.

It is next contended that the court erred in refusing to instruct the jury that they might take into consideration their own view of the lots and blocks appropriated and the result of their own information and knowledge. It appears from the record that the jury were permitted to view the lots and blocks condemned for the railroad. Some of the courts have held "that the jury are not bound by the testimony of the witnesses, but may rest their verdict solely on what is learned at the view." This court has not adopted that rule. Other courts have said "that it is error to instruct the jury to take into consideration, in any degree, the knowledge acquired at the view, as it is not evidence at all." (*City of Topeka v. Martineau*, 42 Kas. 387.) This court has adopted a medium

rule, that is, one falling between the two extremes.

3. Evidence—view by jury. The evidence which the jury may acquire from making the view is not to be elevated to the character of exclusive or predominating evidence. The verdict should be supported by other evidence than the view, and, unless it is supported by substantial evidence given by sworn witnesses, the reviewing court may set aside the verdict. (*City of Topeka v. Martineau,* supra.)

The instructions refused in the present case were objectionable, because they permitted the jury to make their view of the premises exclusive or predominating evidence. If the railroad company had requested an instruction "that the jury might, in considering their verdict, take into consideration the view of the lots and blocks appropriated, the result of their observation therefrom, in connection with the evidence produced before them," it would probably have been given. The condemnation proceedings were in April and May, 1887. The trial in this case was in June, 1889, two years after the appropriation. The jury could not, merely from a view of the lots and blocks in 1889, determine the actual market value of the same in 1887. Their view, however, might have assisted them in ascertaining how many entire lots and how many portions of other lots were taken; the various sized fragments of lots or blocks left; the manner in which the tracks were laid; the cuts, fills, etc., made; and the view of these things might and should have been taken into consideration, in connection with the evidence produced, in considering the verdict.

Finally, it is contended that the court erred in not confining the jury to giving damages simply for the value of the lots taken or partly taken. It appears that the case was presented at the trial by Mrs. Parsons upon the theory that each half block was an entire tract, or that the jury might find from the evidence that each half block was one tract, and therefore that its entire depreciation as one piece or parcel might be considered and measured. The railroad company adhered to the theory that each lot was a separate tract, and that the taking

27 — 51 KAS.

of one or two lots, or more lots, would not materially lessen the value of the other lots in the block or half block not taken. The error alleged, if any, concerning the instruction on account of the depreciation of lots not actually appropriated, is not material, under the special findings of the jury. It appears that the damages allowed were only for the lots actually taken, and nothing for half blocks and lots not taken. The general verdict, exclusive of interest, was $3,184. The amounts, under the special findings of the jury, for lots or parts of lots actually taken, added together, were $3,184.50.

4. Instructions, when harmless.

The judgment of the district court will be affirmed.

All the Justices concurring.