# SHIKANY v. SALT CREEK TRANSP. CO.

(No. 1867; May 8, 1935; 45 Pac. (2d) 645)

192

For the appellant, there was a brief by *Wm. B. Cobb,* of Casper.

For the respondent there was a brief by *Durham & Bacheller,* of Casper, and oral argument by *E. E. Enterline,* of Casper, for *Durham & Bacheller.*

BLUME, Justice.

This is an action, brought by the plaintiff against the defendant, to recover the sum of $2500, the value of one Saruc oriental rug, delivered by plaintiff to defendant, as a common carrier, for transportation from Casper to Sheridan, Wyoming, and subsequently lost. The case was tried to a jury. They returned a verdict in favor of plaintiff in the sum of $725. Judgment was entered thereon, and the defendant has appealed. The parties will be referred to as in the case below.

1. The defendant claims that it did not act as a common carrier in this particular case. It pleaded that "a separate, special and specific contract was entered into between plaintiff and defendant for the carriage and transportation from Casper to Sheridan, Wyo-

ming, of certain household goods belonging to plaintiff, on or about the 14th day of September, 1932; that pursuant to said special contract a lump sum was agreed upon between the parties for the carriage of said goods, but that defendant did not undertake or agree to transport and deliver said household goods as a common carrier for hire." Further, "that the agreed price for said transportation of said goods was the sum of $15.00, and which was, and is a sum of money much less than the authorized and existing rate properly chargeable for the transportation of household goods by motor vehicle common carriers in the State of Wyoming." The only evidence on the point is that of Mr. Hilliar, the manager of the defendant company. He testified that the defendant had a certificate of convenience and necessity as a common carrier of goods, operating between Casper and Sheridan, and that it did not have a certificate as a contract carrier; that he accepted the shipment of the plaintiff's goods as a "lot shipment," and that this "is a shipment that is taken at a reduced price, possibly half truck load or a full truck load; not a fast moving shipment as a rule, and it is not taken subject to classification; where it is classified, each piece would be itemized at different rates, for instance, the household goods shipment in it would take a lower rate than the others. * * * there is a rate set out for oriental rugs." The regular rate he stated to be ninety cents, presumably per 100 pounds, but that "taken as one piece," the classification is higher. While it is not clear, it may be that, judging from the testimony as a whole, it would seem that no fixed rate was considered, but that the goods were agreed to be transported for a lump sum. And the theory of counsel for the defendant is that the facts stated disclose that the defendant in this case did not act as a common carrier, but as a contract carrier, and cannot, accordingly, be held liable as an insurer,

but only, at most, for negligence, of which there is no evidence in this case. He accordingly asked the court to instruct the jury as follows:

"You are instructed that it is the contention of the defendant that the special price or rate was made for the carriage of the goods mentioned in the evidence because such goods, under the agreement, were to be carried as a lot or fill-in shipment. If you find from the evidence that such an arrangement was entered into, then I charge you that the defendant was not an insurer of the safe delivery of the goods and would only be liable for loss if you find from the evidence that the defendant was negligent in some particular."

He further asked the court to instruct the jury that:

"If you find that the defendant reserved to itself the right of accepting or rejecting the offer of plaintiff's goods for carriage, being guided in its decision by the attractiveness or otherwise of the particular offer, then in this transaction you are instructed that as a matter of law the defendant was not acting as a common carrier, but was acting as a private carrier."

The court refused to give these instructions and error is predicated thereon. Counsel, while not claiming that there was any contract relieving the carrier from its liability as an insurer, contends that "when a special contract or agreement was made for the shipment of these goods at a reduced rate, the shipper knew that she could not hold the carrier to the same degree of accountability as though she had paid the regularly established rate, and that it was incumbent upon her upon proof of failure to deliver, to allege and prove some act of negligence on the part of the carrier." It cannot be disputed that whatever else the defendant was, it was a common carrier. Seemingly rates had been fixed by the proper authorities. And it is provided by section 72-507, R. S. 1931, that it shall be unlawful for a common carrier to charge a greater or less rate for any service specified in the schedule of

rates. If, then, a rate was charged in this case as such carrier which was less than that which was lawfully fixed, the defendant violated the statute. It had no permit to operate as a contract carrier, and it would seem to be axiomatic that it could not change its character as a common carrier by violating the statute or by merely calling itself a contract carrier. In fact the statute last mentioned, without passing upon it definitely, seems to forbid that a person or company may act in a dual capacity. Whether or not the defendant could, as a common carrier, lawfully make a contract for reduced liability need not be determined. The mere reduction in the price for transportation could not have that effect, notwithstanding the astounding statement of counsel that it does have that effect, "under all the authorities," without citing us to a single one. It is almost unanimously held that such reduction cannot be effected without the assent of the shipper, and no such assent was shown herein. 10 C. J. 138; 4 R. C. L. 774. In fact the testimony of Mr. Hilliar would seem to indicate that the effect of the agreement made by him was that the "shipment should not be fast moving," but that the household goods might be transported at the convenience of the carrier. No reduced liability seems to have been expected. There is no evidence whatever in the record that the defendant "reserved to itself the right of accepting or rejecting the offer of plaintiff's goods for carriage," even though it might be assumed that it might lawfully do so, and an instruction along that line was, therefore, without any basis. The defendant, being a common carrier, as must be conceded, must be held to have acted as such in the case at bar. The contention, accordingly, now under consideration, must be overruled.

2. The court instructed the jury that if they should find that the defendant was a common carrier and agreed to transport the goods in question as such, it

would be liable as an insurer. It further told the jury in instruction No. 5:

"The court instructs the jury that the laws of the State of Wyoming provide further as follows: 'It shall be the duty of each owner of a motor vehicle to be used in the public transportation of the person or property of another operating between fixed termini over which a regular common carrier route is in operation over any highway of this state outside of incorporated municipalities, as a contract carrier, to secure a permit from the commission to operate over said highways and to annually secure a renewal thereof.' And the court further instructs the jury that the undisputed testimony in the case at bar discloses that the defendant, Salt Creek Transportation Company, did not, on the 14th day of September, 1932, own or possess a certificate of public convenience and necessity to operate as a contract carrier."

The statute referred to is Section 72-509, R. S. 1931. The instruction was not strictly correct in stating that the undisputed evidence in the case showed that the defendant had no "certificate of public convenience and necessity" to operate as a contract carrier. The evidence shows that it did not have a "certificate as a contract carrier." The statute only requires a "permit" —a term not as broad as that used in the instruction. It is clear, however, that we are here merely confronted with a misnomer. The jury could not have been misled by the mistake. Counsel for the defendant claims that the instruction gave the jury to understand that the defendant was operating unlawfully. That is not probable, however. The instruction was given solely for the purpose of guiding the jury in determining whether the defendant was a common or a contract carrier. The plaintiff claimed that the defendant was the former and accepted the goods as such. That fact implies that it operated lawfully in that capacity. At least no question as to the lawfulness of the occupation of defendant as a common carrier was ever raised, and

we do not believe that the jury gained any impression to the contrary. The instruction is further attacked on the ground that there was no evidence that any "regular common carrier route" was in operation over the highway between Casper and Sheridan. But counsel is mistaken. The evidence shows that the defendant itself was a common carrier, and as such transported goods between the places mentioned. We should, perhaps, add, in view of the discussion of the first point in this opinion, that it was not necessary to give the instruction above set out, since there was nothing in the record to indicate that the defendant acted in any capacity other than that of a common carrier.

3. Counsel for the defendant argue that the carrier in this case should not be held liable in any amount, because plaintiff perpetrated a fraud upon the defendant, the fraud consisting of concealment of the value of the rug in question. In other words, counsel claims that it was the duty of the plaintiff, though no inquiry was made of her, to inform the defendant that the rug was of great value. An instruction embodying that theory was offered, but was not given by the court, and error is assigned on account thereof. The only cases cited by counsel are Magnin v. Dinsmore, 62 N. Y. 35, 20 Am. Rep. 448, and Lancaster v. Houghton, (Tex. Civ. App.) 249 S. W. 1103. Counsel for the plaintiff claim that these cases are not applicable for the reason that no agreement for limited liability was entered into and call attention to the language of the court in Magnin v. Dinsmore, supra, where the court said that "where there is no special contract limiting the common law liability of the carrier, nor any notice so specially brought home to the knowledge of the shipper as to have that effect, the shipper is not bound to disclose the value of the goods, unless he is asked thereof by the carrier." The language is misleading. A shipper may be guilty of fraud though there is no

contract, or the equivalent thereof, limiting the liability of a carrier. A number of cases even from New York show that to be true. Orange County Bank v. Brown, 9 Wend. 85; Pardee v. Drew, 25 Wend. 459; Stokes v. R. R. Co., 74 Misc. 402; Magnin v. Dinsmore, supra, cites in support Story on Bailments, Sec. 567, and which latter in turn cites, among other cases, Walker v. Jackson, 10 Mees & Wels. 160, 168, 152 Engl. Repr. 424, where Parke, B., expressed himself more cautiously than the court in Magnin v. Dinsmore, supra.

The rule in cases when a special contract, or the equivalent, has been entered into, is considered in 10 C. J. 174, Sec. 221 and 4 R. C. L. 792, Sec. 249. In such case the limited liability is primarily based on the provisions in a contract. But there may be a limited, or no liability, in the absence thereof, in cases in which there is fraud or its equivalent. 10 C. J. 115; Hutchinson on Carriers (3rd Ed.), Sec. 330, and see especially Chesapeake & Ohio R. R. v. Hall, 136 Ky. 379, 124 S. W. 372, Ann. Cas. 1912A, 364. That rule was applied as early as 1769 in the case of Gibbon v. Paynton, 4 Burrows 2298, 98 Engl. Repr. 119. A great many of the cases in which concealment was held equivalent to fraud were cases in which money was sent in an unusual manner. The case last cited contains reference to a number of the authorities, as does also the case of Humphreys v. Perry, 148 U. S. 627, 13 Sup. Ct. 711, 37 L. Ed. 587. Many illustrations are also given in note 82 to 10 C. J. 118. In the cases examined by us the property in controversy was shipped in an unusual manner so as to give the impression that it was less valuable than in fact it was. In the case of Morris v. Express Company, 183 N. C. 144, 110 S. E. 855, it was stated that ordinarily there should be a false statement of some essential fact, knowingly made and reasonably relied upon by the carrier, and that

"in a case of constructive fraud, the silence of the party claimant, together with the facts and circumstances of the transaction, must in fact and effect be the equivalent of such a representation." The books contain a number of illustrations when silence was held not to be equivalent to fraud. Note 83, 10 C. J. 118. Thus the full value was held to be recoverable of goods marked "photo goods," when they were in fact such, but of unusual value, containing some negative views of prehistoric cities. Southern Pac. Ry. Co. v. D'Arcais, 27 Tex. Civ. App. 57, 64 S. W. 813. In Gotham Mfg. Co. v. Fargo, 35 N. Y. Super, 434, the plaintiff shipped silver coin to the value of $339.00. The package was addressed to well-known manufacturers of silver. Its external appearance was in harmony with its contents and indicated that it did not contain ordinary merchandise. The plaintiff testified that he informed the carrier's agent that the package was valuable, but the agent denied it. It was held as a matter of law, that since there was no misrepresentation, the plaintiff was entitled to recover the full value of the package. In Galveston etc. Ry. Co. v. Quilhot, (Tex. Civ. App.) 134 S. W. 264, plaintiff shipped, among other things, hand-painted china and other exceptionally valuable articles in a barrel marked "glass." But the testimony showed that the agent did not in fact rely upon the marking of the barrel, but wrote thereon that the contents were unknown, without making further inquiry. It was held that inasmuch as the agent was not deceived, and inasmuch as it was not unusual to ship property of the kind in question, plaintiff was entitled to recover the full value thereof.

In the case at bar, the oriental rug was, undoubtedly, properly classed as part of the household goods, and we think that we may well assume that the use of such rugs is not so limited as to attract particular attention. For the purpose of this case we should take its value

as that fixed by the jury and not that fixed by the plaintiff. The rug, when shipped, was not crated; it was rolled or folded, without being tied, and thus was, or could have been, in plain view of the defendant's agents. There is testimony in the record, uncontradicted, that LaVelle, who at that time was in defendant's employ, was told to be careful with the rug, since it was valuable. Mr. Hilliar, the manager of defendant, was in plaintiff's house to look over the property to be shipped. Plaintiff's daughter testified that he saw the oriental rug. Mr. Hilliar himself, while admitting that he saw some rugs, stated that no oriental rug was pointed out to him. But one rug of the size of 9½ feet by 12½ feet was shipped. Hilliar admitted that he saw one of that size, but claimed that it was not an oriental rug. No misleading statements are claimed to have been made by plaintiff. Hence it is clear that defendant could not have been misled, but that it had ample and easy opportunity of knowledge of the property shipped. When the manager, after seeing the rug in question, drew the conclusion that it was but an ordinary rug, he was, as the jury thought, mistaken, and he acted at his peril. Plaintiff cannot, accordingly, be held to have been guilty of any fraud, and the court rightly refused to give the instruction on the point just discussed.

4. Counsel for defendant claims that household goods have no market value; that such value is not the proper measure of damages and that the court erred in instructing the jury that if they found for the plaintiff, she would be entitled to recover the market value of the property in question. It is not quite true that an oriental rug has no market value of any kind. It would have a limited market value among second-hand dealers, and if sold at auction would bring something, depending, of course, on the situation and on the conditions. An oriental rug, sold as an heir-loom of some

noted person or family might sell for a large sum of money. It may not be without interest to counsel to know that the Supreme Court of California in Stark v. Shemada, 187 Cal. 785, 204 Pac. 214, 215, stated that "it is a matter of common knowledge that second-hand household and hotel furnishings are a commodity of extensive barter and sale, with a market value, according to its condition and quality, readily ascertainable"—a statement which could not, we think, be taken at full value when applied to the conditions in this state, or to a case like that at bar. And on the whole, we think that the contention of counsel for defendant is right in so far as it relates to market value of the goods in question. The great weight of authority is to the effect that second-hand household goods in use do not have a market value in the ordinary sense, and that the measure of damages in case of loss or conversion is not the price which could be realized by a sale of the goods in the market, but the actual money loss resulting to the plaintiff—that is to say the actual value of the property, or as it is sometimes said, its value to the owner; excluding, however, any mere fanciful or sentimental value which might be placed thereon. 8 R. C. L. 488; 26 R. C. L. 1149; 10 C. J. 398; 65 C. J. 153-154; cases cited in exhaustive notes to 63 A. L. R. 240; L. R. A. (N. S.) 1917D 495; 3 Ann. Cas. 889; 62 Am. St. Rep. 772; Ann. Cas. 1917B 585; St. Louis etc. R. Co. v. Dunham, 36 Okl. 724, 129 Pac. 862; Barber v. Motor Inv. Co., 136 Or. 361, 298 Pac. 216. And see Lake Shore etc. Co. v. Warren, 3 Wyo. 134, 6 Pac. 724.

Thus far, then, counsel for the defendant is right. But whether he seeks to apply the rule correctly in this case is another question. The reason of the rule must be examined. See the apt statements in Barker v. Storage & Transfer Co., 78 Conn. 198, 61 Atl. 363, 3 Ann. Cas. 889; Starkey v. Kelly, 50 N. Y. 676, and

Aufderheide v. Fulk, 64 Ind. App. 149, 112 N. E. 399, in which the reasons for the rule are well stated. It appears from these and other cases that a holding, or instruction, in a case like that at bar, to the effect that plaintiff should be limited to the market value of the goods in question is too strict. In these cases it was the contention of the defendant that the court should hold, or instruct, that the plaintiff should be so limited in his recovery. In each of the cases cited to us by counsel for the defendant—and in all other similar cases, so far as we have been able to find, and we have examined many—the same contention was made. There the objection was that the court did *not* instruct, or hold, that the plaintiff should be limited to the market value—the very reverse of the objection made by counsel for the defendant in the case at bar. The plaintiff, doubtless, could, in the proper case, have come to this court complaining of the instruction given by the court on the point under discussion. We cannot see what grounds defendant has on that score. The cases cited do not support counsel's contention in that regard even in the least. Not one has been cited to show that his client has grounds for complaint, and we have examined numberless cases attempting to find one, but have not succeeded. The reason is clear. The court in its instruction made of the plaintiff the strictest requirement that can ordinarily be made in a case for the loss or conversion of second-hand goods; it limited the jury to the lowest possible value that could be set upon plaintiff's goods. The instruction was accordingly too favorable to the defendant. In the case of Souther v. Hunt, (Tex. Civ. App.) 141 S. W. 359, the plaintiff sued for the conversion of household goods, furniture and personal effects, and it was said in that case that "the court did instruct the jury that the measure of damages was the reasonable cash market value of the goods mentioned in appellee's peti-

tion, and in this respect the charge was more favorable than appellant was entitled to." It is a well known rule that appellant cannot complain "of instructions adopting a measure of damages which could not have been more favorable to appellant, or which was more favorable to appellant than he was entitled to." 4 C. J. 919-920; Bruno v. Grande, 31 Ariz. 206, 251 Pac. 550; Cleveland etc. Ry. Co. v. Gannon, 63 Ind. App. 289, 112 N. E. 411; Hanen v. Lenander, 178 Ia. 569, 160 N. W. 18. The appellant's assignment of error in this connection must, therefore, be overruled.

5. Counsel for defendant insists that there was no evidence of the market value or of any value of the rug in question, and states that the only testimony on the subject bears upon the value to the *plaintiff*, which, it is claimed, is no proof at all. The abstract of the record, while brief on this point, is not an unfair representation of the testimony as it appears in the record, and contradicts the claim of counsel. In order that the correctness of his claim may be further tested, we shall set out the evidence relating to the value, but shall first mention the fact that it was shown that the rug was 9½ x 12½ feet in size, was bought in Europe by plaintiff's husband (apparently deceased) thirty-eight years before, the amount paid by him not being known; that the rug was in good condition and special care had been taken thereof. Plaintiff's testimony as to the value, together with the objections made, and the ruling thereon, is in detail as follows:

"Q. What in your opinion, Mrs. Shikany, was the value of the rug at the time shipped?" This was objected to on the ground that no proper foundation was laid. The objection was overruled. "Q. Tell the jury, in your opinion, what is the value of the rug? A. Well, value about $2500, to me. Q. I do not want to know what its value is to you. What, in your opinion, is the market value of the rug? What could you sell it for? A. Well, in my opinion it is worth over two thousand

dollars to me. Q. I do not want to know what it is worth to you. What can you sell it for? A. I can't sell less than two— Q. (interrupting) It isn't what the rug is worth to you, it is what can you sell it for? A. Well, I will sell it for twenty-five hundred dollars. Q. I want you to tell the jury what, in your opinion, was the value of the rug—not to you or anyone else, but what could you sell it for? A. *For twenty-five hundred dollars.*"

On cross-examination, the following appears:

"Q. Were you ever offered $2500 for it? A. I never put it on sale."

At the close of plaintiff's testimony, the defendant made a motion for a directed verdict on the ground, among others, that "there is no proof of the value of the rug in question, and that if the jury is permitted to pass upon the case, it must, of necessity, speculate and conjecture as to the value and kind of rug involved." Thereupon the plaintiff was recalled for further examination.

"Q. What in your opinion was the reasonable market value of the rug at the time it was shipped?" This was objected to as incompetent, irrelevant and immaterial, and as repetition. "A. It is to me— Q. (interrupting) Not to you. A. *In my opinion, the rug is worth twenty-five hundred dollars.*"

The witness Peterson, claiming to be an expert on oriental rugs, was permitted to testify that some of the old oriental rugs, including the Saruc, are expensive rugs; that they are very closely woven; that in the older oriental rugs, a vegetable dye was used; that they were made of the finest kinds of wool and workmanship, coloring and design, and that such rugs are rugs of the "first class," whereas in modern rugs a chemical dye is used, which is not as good for rugs as the vegetable dye; that such oriental rug, 50 to 100 years old, is an "antique"; that it takes a new rug from seven to ten years or more to get into good shape

by wear, and the "older they get the better they are." The witness, however, stated that he would not be able to tell the value of the plaintiff's rug unless he saw it. On cross-examination he indicated that the value of domestic rugs is not as great as that of genuine oriental rugs. Defendant did not introduce any testimony as to value.

We are at a loss, in view of this testimony, to account for counsel's repeated statement that the only value which appears in the testimony is that *to the plaintiff*. True, she testified to that; but she also testified to more. In answer to the question "what could you sell it for?" she answered "for $2500." This, perhaps, related to the market value. When she was recalled, she testified, plainly, that in her opinion the rug was worth $2500. Both of these answers clearly go beyond the point of value merely to the plaintiff. The fact that the witness in answer to several questions stated the value *to her,* surely does not necessarily show that her subsequent answers refer to the same thing. Nor are we as confident as counsel seems to be that the testimony of plaintiff as to the value *to her,* while not, perhaps, to be commended, is of no force whatever, when taken in connection with all of her testimony. The very authorities cited by him (e. g. Elliott on Railroads (3rd ed.), Sec. 2748) hold that, in the absence of market value, the fair value *to the owner* should be allowed in cases like that at bar. That, it is true, does not include purely fanciful or sentimental value, but it does include any actual value to the owner. If, for instance, a piece of household goods which has been used is substantially as good as new for all practical purposes, it would hardly be just that the owner should have compensation merely upon the basis of a second-hand piece of goods. And if, in addition, actual use has in fact increased the value thereof, no reason exists why that should not be considered.

Of course, if it appeared that the plaintiff, when she testified as to the value *to her,* meant, not the actual value to her, in the sense above stated, but merely sentimental value, or value which had no relation to actual value, the situation would be quite different. It was said in Gleason v. R. Co., 49 Utah 405, 164 Pac. 484, that "neither this nor any other court, so far as we know, has ever gone to the length of permitting a plaintiff to prove the value of property by merely showing what he assumed it to be worth or what it was worth to him." And see 22 C. J. 582. But it is clear from the examination of the case that the court referred to value other than actual value. Plaintiff's testimony in the respect mentioned does not show what plaintiff included in her estimate, and counsel for the defendant did not take the trouble to find out. The jury may have understood the testimony in a sense different from that in which it is understood by counsel for defendant.

Counsel argues that the jury necessarily merely speculated on the value, as shown by the fact that they fixed the value at $725, whereas the plaintiff's testimony fixed it at $2500, and that for that reason, the judgment should be set aside. A like contention was made in the case of Dyer v. Barnes, 128 Me. 131, 145 Atl. 741 (1929). In that case the plaintiff sued for the value of his services in digging a well, and fixed such value at $825. That was the only testimony on that point. The jury returned a verdict for $666.60. The defendant appealed. It was argued that the judgment should have been for the whole amount or none. The Supreme Court, in brushing the argument aside, stated:

"Where there exists a fixed standard or scale by which damages may be calculated, a jury will not be permitted to depart from it * * * But no such standard is applicable to the case at bar. Damages were not

liquidated, nor were they capable of being reduced to certainty by arithmetical calculation, so the criterion was how much the plaintiff deserved for drilling the well. He was allowed to express his opinion from personal knowledge of a transaction in the ordinary affairs of life. Snow v. Boston & Maine Railroad, 65 Me. 230. The jury in arriving at its own opinion, from the facts and circumstances and inferences and the opinion given in testimony, might accept the latter opinion at face value, or discredit it, wholly or in part. Snow v. Boston & Maine Railroad, supra."

See also 64 C. J. 1083. Other cases, similar in effect, will be mentioned later, and show that the argument of counsel above mentioned is not well taken.

Defendant's contention, in substance, is that there is no, or, perhaps better, no substantial evidence to sustain the judgment. It must, however, be borne in mind that value is often an illusive factor in the realm of law. Just how much a particular article of furniture is worth to the family owning and using it may, in many instances, be difficult to determine, and in all instances value is largely a matter of opinion. Missouri etc. R. Co. v. Davidson, 25 Tex. Civ. App. 134. Plaintiff must, of course, always produce the best evidence available. Sedgwick on Damages (9th Ed.), Sec. 171. We cannot say that this has not been done in the case at bar. In some cases, the cost of the article, in addition to the opinion on value, has been shown. That could not be done here. But that should not alone prevent plaintiff from recovering the actual value of the rug. La Campagnie etc. v. Persaglio, (CCA) 165 Fed. 638. In other cases, experts have been called to aid. That was done in this case, but while giving valuable testimony, he was, unfortunately, not able to estimate the value of the rug in dollars. But that, too, should not prevent plaintiff's recovery, if the evidence, taken as a whole, furnishes a reasonable basis therefor. It is, apparently, not now contended that plaintiff was

not competent as a witness. An objection on that point was made at the trial, but it is not argued, and we need not now consider it, except as it has a bearing on the contention that there is no proof, or no substantial proof, as to the value of the property in controversy. Prof. Wigmore, in his second edition on Evidence, in Sec. 716, speaking of testimony as to personal property, states:

"Here the general test, that *any one familiar* with the values in question may testify, is liberally applied, and with few attempts to lay down detailed minor tests. The *owner of an article,* whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and courts have usually made no objection to this policy."

The authorities sustaining this statement are numerous. 22 C. J. 581; Chamberlayne, Modern Law of Evidence, Sec. 2127. Note L. R. A. 1917 D 505-507; Davis Agent v. Rhodes, 206 Ky. 340; Barrett v. Fournial, (CCA) 21 Fed. (2d) 298; Kirstein v. Bekins Van & Storage Co., 27 Cal. App. 586, 150 Pac. 999; Sedgwick on Damages (9th Ed.), Sec. 1294. The contrary was held in Roy v. Clark, (Mont.) 215 Pac. 232, but the decision on that point was repudiated in Klind v. Bank, 69 Mont. 385, 222 Pac. 439.

We do not say that the rule should be applied in all cases and as to all classes of personal property. It must be applied reasonably. Owners ordinarily have a fair understanding of the value of the property in their possession and use. That is the basis of the rule. By reason thereof, they are *prima facie* qualified as witnesses; they are presumed to know the value, unless the contrary appears. Note L. R. A. 1917 D 506-507; Meyer v. Express Co., 240 Mass. 94, 132 N. E. 672; Taylor v. R. Co., (Mo. App.) 256 S. W. 499; Parmelee v. Raymond, 43 Ill. App. 609; Wenn v. Storage & Fur-

niture Co., 236 Ill. App. 601; Union Pac. D. & G. Co. v. Williams, 3 Colo. App. 529, 34 Pac. 731; Tubbs v. Garrison, 68 Ia. 48, 25 N. W. 921. The rule mentioned by Wigmore, supra, has often been applied to household goods and personal belongings. 22 C. J. 582.

Nor are cases lacking in which the testimony of a single witness, not specially conversant with values, has been held sufficient to carry the case to the jury on that point. The case of State v. Finch, 70 Iowa 316, 30 N. W. 578, was a criminal case, involving larceny, in which we would expect the rules of law to be somewhat stricter than in a civil case. In so far as it has any bearing herein, is shown by the following excerpt from the opinion of the court:

"It was insisted below that there was no legal proof of the value of the overcoat. The only witness who testified to the value of the overcoat was one Arnold. He showed that he had never seen a sealskin overcoat bought or sold, and did not show that he had any knowledge of the value of such an article, except such as any man of ordinary intelligence might be presumed to have. We do not think, however, that we should be justified in wholly discarding his testimony. He might not be a very accurate judge of the value of such an article, but we think that, having seen and examined the coat, he might form some opinion about it. He doubtless could judge with considerable accuracy of the value of such overcoats as are in common use, and he could judge, we think, though perhaps not as accurately, how this compared in value with the best of such coats. We think that his testimony was not inadmissible, and, if not, the verdict was not without support."

In the case of Hood v. Van & Storage Co., 178 Cal. 150, 172 Pac. 593, the facts and the conclusions of the court appear in the opinion of the court as follows:

"The only evidence offered touching the question of the value of the goods destroyed was that of plaintiff herself. Appellant insists not only that she failed to qualify as a witness competent to testify upon the sub-

ject, but that her testimony was so uncertain and contradictory that it was not entitled to any weight whatsoever in considering the question. The value of her evidence and weight thereof was a question for the determination of the trial judge. Her testimony, however uncertain and contradictory, was nevertheless the only evidence offered bearing upon the subject, and since it satisfied the trial judge that the value of the goods alleged in the complaint to be worth upwards of $3000 was in fact $1500, it is not the province of this court, upon a review thereof, to determine otherwise."

The case of La Compagnie etc. v. Persaglio, (CCA) 165 Fed. 638, involved the loss of personal belongings shipped in a trunk. It seems that the defendant, against whom judgment was rendered, complained both of the competency of the witness as well as the sufficiency of the evidence to support the amount of the judgment. The plaintiff was the only witness. He was permitted to testify that the value of the goods was $400, although he had no personal knowledge. The court said: .

"The witness had said that his wife bought the clothes; that he could not tell the prices she paid, but gave her the money for them. This does not prove that he was unable, independently as a father of the family, to give a fair estimate of the value of the wearing apparel, and therefore the trial judge was justified in refusing to strike out his testimony for the reasons assigned. The value of the clothing of a family of steerage passengers does not admit of very accurate proof, and as the jury and the trial judge were both satisfied, and we think the verdict reasonable we are not astute to amplify the defendant's exceptions."

Ordinarily, it is true, the rule of Wigmore, supra, has been applied to household goods and personal belonging in common use and generally purchased by everyone. See, e. g., Berry v. Ingalls, 199 Mass. 77, 85 N. E. 191; Erickson v. Drazkowski, 94 Mich. 551, 54 N. W. 283; Tubbs v. Garrison, 68 Ia. 48, 25 N. W.

921. But in Colby v. Kimball, 99 Iowa 321, it, and the rule of presumption above stated, was applied in a case involving the conversion of a piano. In Fredericks v. Sault, 19 Ind. App. 604, 49 N. E. 909, a witness was held to be qualified to testify to the value of a piano, when it appeared that she was a pianist, that she had had experience in the use of pianos, and that she was asked to select the instrument when it was purchased, and that she did select it. In the case of F. W. Bromberg & Co. v. Norton, 209 Ala. 117, 93 So. 837, involving the conversion of a valuable diamond, there was considerable testimony showing that the witness was qualified. So, while the case is not strongly in point, the rule of Wigmore, nevertheless, was approved. In the case of Graham v. Cohen, 111 Cal. App. 131, 295 Pac. 46, a case of conversion of valuable diamonds, the plaintiff, apparently without qualifying himself specially, was permitted to testify to the value of the property in suit. There was no other evidence in the case on that question, and the court said that "there is no doubt under the authorities that the owner of an article, whether he be generally familiar with such value or not, is entitled to testify as to its worth, and that a finding of value based upon such evidence may not be disturbed on appeal." In the case at bar, the property involved is an oriental rug, presumably of the value of $725.00. Defendant did not see fit to cross-examine plaintiff as to her knowledge of value. The rug had been in the possession and use and ownership of the plaintiff for a period of 38 years, and it would seem that it would not be out of place to apply the rules above mentioned to her. Hence we cannot say that her testimony as to value was worthless.

Furthermore, we think that counsel is wrong in wholly ignoring the testimony of the witness Peterson, from which it appears that oriental rugs are more valuable than domestic rugs; that the former are of better

make and workmanship, and that they increase in value with age. Sight must not be lost of the fact that this and all other testimony in the case was to be construed by the jury in the light of their own knowledge and experience. True, the ordinary rule is that a verdict must be based upon the testimony in the case, and the modification of that rule, that the jury can apply their own knowledge to the facts in a case, is limited in extent. But that it can be applied as to matters upon which men in general have a common fund of knowledge and experience is just as settled as the main rule. 16 R. C. L. 303, 304; Wigmore on Ev. (2nd Ed.), Sec. 2570; 64 C. J. 1021-1024; Sedgwick on Damages (9th Ed.), Sec. 171a. In fact, in some cases damages may be fixed by a jury upon the mere disclosure of the facts without testimony as to the estimate of the damages. Sedgwick, supra, Sec. 171a. Thus in Denver Cons. Tramway Co. v. Riley, (Colo.) 59 Pac. 476, involving the value of the services and companionship of a wife, who was injured, the court said that "the husband is entitled to compensation in money for their loss, and the amount of that compensation is to be determined by the jury, not from evidence of value, but from their own observation, experience and knowledge, conscientiously applied to the facts and circumstances of the case." Again, it has been held that life expectancy may be determined by the jury, without the aid of mortality tables, but from their common knowledge, if they have seen the person whose expectancy of life is in question. Kawamura v. Honek, 127 Cal. App. 509, 16 P. (2d) 150; and see additional cases in note (a) 64 C. J. 1024. And the rule has been applied to cases where the value of property was in question. Thus in Hartman v. Pittsburgh Incline Co., 159 Pa. 442, 28 Atl. 145, involving the question of damages for injury to a house, the facts were given, but no estimate of the cost of repair. The court said

that "the ordinary intelligence and experience of jurors is sufficient to enable them to say with reasonable accuracy how much it would cost to repair damages such as were described by the witnesses in this case." In Bradford v. Steamship Co., 147 Mass. 55, the goods of the plaintiff were valued at about $3500. They were damaged by salt water and soda ash, against which the defendant had insured the plaintiff. The only evidence offered as to the estimate of the damage was the report of an appraiser, since deceased, who had fixed the damage at about $1500. This report was held inadmissible, both in the trial and the appellate court. Notwithstanding that the lower court ruled that the jury could find damages against the insurance company in the sum of $500. Said the Supreme Court, through Justice Holmes: "We cannot say that a jury would not be warranted in finding, as a matter of common experience, that damage of such a nature to such goods could not be less than five hundred dollars, or somewhat under a third of the value of those goods which were all soaked with the alkali." The case of Salter v. Furniture Co., 144 Miss. 194, 109 So. 704, involved the value of household goods. The court after remarking that such value is a matter of opinion, stated: "In addition to the evidence of witnesses, the jury had the right to apply their own knowledge of such matters, acquired by experience and observation. They had the right to use such knowledge along with the evidence in the case, and deduce from the whole their judgment as to the value of the property." In Westerfield & Meeks v. Catlett, 153 Miss. 228, 120 So. 458, the court, after approving what was said in the Salter case, further stated that "in questions of value where there is no market value, but depending upon the character and use of property, and its condition, etc., the law has, of necessity, relaxed the rule of strict, definite, specific proof, and has authorized the jury to

take all the available facts pertinent to the question, and apply their common sense and experience to such facts, and therefrom deduce the value of the property or the extent of the damage or injury." The case of Murdock v. Sumner, 22 Pick. (Mass.) 156, was a case of trover for goods. The court held that if a juror knew of any fact, he should testify to that in open court, and that such fact should not otherwise be considered. But they also said:

"The facts were stated by the witness, and also his opinion. But the jurors had full opportunity to exercise their own judgment on the facts, and form their own opinion of the value. * * * the jury may properly exercise their own judgment and apply their own knowledge and experience in regard to the general subject of inquiry. In the present case, the jury were not bound by the opinion of the witness; they might have taken the facts testified by him, as to the cost, quality and condition of the goods, and come to a different opinion as to their value."

See also Green v. City of Chicago, 97 Ill. 370, 372; Sedgwick, supra, Sec. 171 and cases cited. But see contra, to some extent, Chicago etc. R. Co. v. Parsons, 51 Kans. 408, 32 Pac. 1083.

We need not go as far as some of the cases from which we have quoted, and need not assume that jurymen have general knowledge or experience as to the value of oriental rugs. It would, however, seem that we are justified, from what has been said, and from the authorities from which we have quoted, to come to the following conclusions:

The use of common, domestic rugs is so universal that all the members of a jury may well be presumed to have some general knowledge of the value thereof. They had the right to take such general knowledge, and their experience, into consideration in determining the case. They knew, accordingly, without evidence on the subject, at least the fact that such ordinary, do-

mestic rug is of some substantial value. They knew from the testimony and probably from their general experience, that oriental rugs are of greater value than domestic rugs. The rug in question was in good condition, and special care had been taken thereof. Then there was the age of the rug, which, according to the witness Peterson, made the rug still more valuable. These combined factors were sufficient to show that the rug in controversy had a value of a substantial amount. Further, the jury had the testimony of the plaintiff that the rug was worth $2500. They discounted that testimony to a considerable extent, which they had the right to do, and they believed that the value was $725.00. The writer would be more satisfied with the verdict if the amount had been fixed lower. But his judgment, too, would be a mere estimate, based partially on the want of recognition or appreciation of antiques or near-antiques. Counsel for defendant states in his brief that, had there been any evidence of value, he would have produced testimony that a new Surac oriental rug could be bought in Denver for $295 to $395. Counsel misjudged the effect of the testimony, and it might have been better if he had produced the testimony mentioned, although, of course, the evidence of the age of the rug in question would still have to be considered. All in all, the value fixed by the jury, and approved by the trial judge, does not seem to be so unconscionably high as to warrant us to interfere. Moreover, counsel for defendant has not contended that the amount fixed by the jury is excessive, if there is evidence legally warranting the jury to give judgment for any amount. We think there was such evidence, and it is, accordingly, doubtful that, in view of counsel's position, we could give consideration to the amount of the verdict.

6. Counsel complains that the court refused to submit special interrogatories to the jury. The questions

involved herein were simple, and we think, therefore, that this case in that respect is governed by Opitz v. Town of Newcastle, 35 Wyo. 358, 249 Pac. 799, and Wallace v. Skinner, 15 Wyo. 233, 88 Pac. 221. Counsel also complains of misconduct of the opposing attorney. No exception was taken at the time so that the court might have warned the jury. And without discussing the point further, we have concluded that even if the misconduct took place, as claimed, it was not prejudicial. And lastly, counsel for defendant considers it error that the court refused to permit him to introduce the way-bill, used in connection with the shipment in question, in evidence. It was not shown that plaintiff ever had a copy of it, or knew anything about it. It showed nothing that might have a bearing upon the issues in the case at bar. And the court committed no error in not receiving it.

It follows that the judgment herein must be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.