HENSHAW v HENSHAW

Docket No. 31254. Submitted February 7, 1978, at Lansing.—Decided May 8, 1978.

Fay F. Henshaw was granted a divorce from Richard C. Henshaw in Ingham Circuit Court, Jack W. Warren, J. Custody of their minor daughter, Elizabeth F. Henshaw, was awarded to plaintiff and defendant was granted visitation privileges and ordered to pay child support. Subsequently, defendant filed a motion seeking reduction or termination of child support payments on the ground that the child's refusal to visit him rendered his visitation rights useless and for this reason he should be relieved of his support obligation. Motion denied. Defendant appeals. *Held:*

There is no justification following a divorce, where there has been an award of custody of a minor daughter to the mother and an order of child support and visitation privileges to the father, for a cutoff of child support payments just because the daughter refuses to visit with her father.

Affirmed.

1. APPEAL AND ERROR—DIVORCE—DE NOVO REVIEW.

The Court of Appeals reviews divorce cases *de novo* but it will not revise or modify alimony awards and property settlements unless it is convinced that it would have reached a different result had it occupied the position of the trial court.

2. INFANTS—DIVORCE—VISITATION RIGHTS—CHILD CUSTODY ACT—STATUTES.

Disputes over child visitation privileges are governed by the Child Custody Act (1970 PA 91; MCL 722.21 *et seq.;* MSA 25.312[1] *et seq.).*

3. INFANTS—DIVORCE—VISITATION RIGHTS—SUPPORT PAYMENTS.

Termination or reduction of child support payments may not be used as a weapon to force a child's visitation.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 868.

[2–4] 24 Am Jur 2d, Divorce and Separation §§ 801, 802.

4. DIVORCE—INFANTS—VISITATION RIGHTS—CHILD SUPPORT.

  There is no constitutional right to be liked or loved; therefore a
  father who has been granted visitation rights following a
  divorce must convince his daughter that she should visit him,
  but, if she refuses, there is no justification for a cutoff of child
  support or for relief from his support obligation.

*William Pultusker,* for defendant.

Before: N. J. KAUFMAN, P. J., and D. E. HOL-
BROOK, JR. and D. F. WALSH, JJ.

N. J. KAUFMAN, P. J. Defendant husband ap-
peals from a judgment of the trial court denying
his motion for reduction or termination of child
support payments to plaintiff wife for the support
of their daughter. Defendant claimed that the
child's refusal to visit him rendered his visitation
rights under the divorce decree useless, relieving
him of his support obligation.

The parties were married on August 26 or 27,
1949, in Texas. They have two children: Richard
Charles Henshaw, born February 15, 1957, who
has attained the age of majority, and Elizabeth
Faye Henshaw, born October 28, 1962. The parties
were divorced on May 23, 1975, on the basis of an
irretrievable breakdown in the marriage relation-
ship. The court awarded custody of Elizabeth to
plaintiff wife and ordered defendant husband to
pay $60/week child support as well as assuming
certain other expenses. Defendant received "rea-
sonable rights of visitation" with the child.

On July 2, 1975, defendant filed a motion for a
new trial or alternately to set aside the judgment,
alleging that (1) plaintiff was violating an agree-
ment respecting the division of personal property,[1]
and (2) that "Defendant has been denied visitation

---

[1] This issue was not briefed on appeal and we treat it as abandoned.
*Mitcham v Detroit,* 355 Mich 182; 94 NW2d 388 (1955).

rights by the actions of Plaintiff". Shortly afterward plaintiff brought an action alleging breach of the support provisions of the divorce decree. At various times since then, both parties have been ordered to appear and show cause why they should not be found in contempt of court, the plaintiff for not allowing visitation of her daughter to defendant and defendant for being in arrears of support payments. On January 15, 1976, the court did amend the visitation provisions of the divorce judgment by specifying particular times for the father's visitation with the child.

At the May 12, 1976, hearing for cancellation of support payments, both plaintiff and defendant testified. Plaintiff testified she did not interfere with her daughter's visitation. Defendant stated that he did not get regular visitation and that he had no control over his daughter.

Over plaintiff's objections, Elizabeth Henshaw—who was then age 13—took the stand. The judge explained the problem and the reasons for his visitation order. When asked to comment, Elizabeth said:

"Well, I don't like to be with my dad because . . . I mean, we don't really have any interest in common, and a lot of times he just embarrasses me. And the only reason I ever see him, really, is really just to see Richard, because I don't really feel like my dad . . . I mean we don't have anything in common and he embarrasses me, and sometimes he criticises me."

At the conclusion of the hearing on May 12, the judge announced that he could not find Mrs. Henshaw in contempt because there was no testimony that she affirmatively acted to disobey the court's order. She had not implemented a program to convince the child of the wisdom of visiting her

father, but she was under no duty to do so. The judge stated, "I have to accept the testimony of that daughter to the effect that she doesn't want to visit her father. There's no testimony that rebuts that." He said he was "appalled" at his inability to act.

On November 17, 1976, the trial judge filed an order denying the motion to cancel and/or reduce child support. Defendant appeals.

Initially, we must compliment the trial judge for his tolerance and patience. He heard testimony from both sides. He carefully explained to the daughter that she should visit with her father. He set specific dates for visitation and we certainly know what he meant when he stated he was "appalled" by his inability to act. There are very few matters that are more agonizing, frustrating, baffling and troublesome to a trial judge, especially if he does everything he can think of and still does not solve the problem.

However, it is clear to us that it is the defendant-father who must convince his daughter that she should visit him. We cannot prescribe how that should be accomplished because each case of this kind presents a new situation. The child's likes and dislikes, her activities, her age and friends are all variables which weigh heavily in matters of this type.

In *Schilleman v Schilleman,* 61 Mich App 446, 449; 232 NW2d 737 (1975), *lv den* 395 Mich 769 (1975), this Court concluded:

"While this Court hears appeals in divorce cases *de novo,* we will not revise or modify alimony awards and property settlements in divorce cases unless convinced that we would have reached a different result had we occupied the position of the trial court. *Ireland v Ire-*

*land,* 56 Mich App 594; 224 NW2d 662 (1974), *Hostetler v Hostetler,* 46 Mich App 724; 208 NW2d 596 (1973)."

We are not convinced we would have reached a different result. The child's interests must be paramount. As noted in *Stevenson v Stevenson,* 74 Mich App 656, 658–659; 254 NW2d 337 (1977):

"Since 1971, the Child Custody Act, 1970 PA 91; MCLA 722.21 *et seq.;* MSA 25.312(1) *et seq.,* has governed disputes over child visitation. While the act focuses on custody disputes, there can be little doubt that the act was intended to control visitation privileges as well. MCLA 722.24, 722.27, 722.27a; MSA 25.312(4), 25.312(7), 25.312(7a). *Lorenz v Lorenz,* 70 Mich App 356; 247 NW2d 569 (1976)."

We hold that support payments may not be used as a weapon to force a child's visitation.

While defendant's disinclination to support a child who feels only a limited measure of affection for him is in a way understandable, his plight is not much different from that of many custodial parents who find themselves estranged from their children, especially as the latter enter adolescence. Estrangement of daughter from father "is, unfortunately, an all too common result of homes destroyed by divorce". *Straver v Straver,* 26 NJ Misc 218; 59 A2d 39, 41–42 (1948). There is no constitutional right to be liked or loved. Elizabeth Henshaw—obviously an intelligent and articulate girl —made quite clear that she feels no hostility toward her father and desires his companionship from time to time. But she also made clear that she shares few interests with her father, that she has a life of her own, and that she cannot be coerced into artificial expressions of greater affection than she truly feels—least of all at scheduled times and places decreed by court order. That

Elizabeth feels this way is unfortunate, even tragic, but it hardly justifies calling on the retributive power of the state.

Affection is bestowed, not bought. Family relations cannot be regulated by the clock. Obviously, any coerced companionship the defendant might compel by a cutoff of child support would be utterly devoid of the sentiments of filial love and respect whose encouragement furnished the only admissible ground for visitation in the first place.

Affirmed.