**Sarah Amanda GAINES, Appellant,**

v.

**Julian GAINES, Appellee.**

Court of Appeals of Kentucky.

May 26, 1978.

James H. Highfield, Berry, Floyd & Highfield, Carrollton, for appellant.

Stanley M. Billingsley, Carrollton, for appellee.

Before HOWERTON, LESTER and WHITE, JJ.

LESTER, Judge.

This appeal from a judgment of dissolution of marriage raises questions concerning the jurisdiction of the trial court relative to child custody, support, maintenance, costs and the power of the court to make determinations regarding personal property and debts situated outside the Commonwealth.

We are not favored with a transcript of evidence or a narrative statement of what the testimony was, so we will glean from the pleadings and the findings of fact so much of the circumstantial history of the litigation as we are enabled to find.

The parties to this action were married in 1965 in the State of Georgia and resided either in that jurisdiction or some place other than Kentucky until March of 1976 when they moved to Warsaw. The couple have two children who are approximately eight and ten years old at the present time. Domestic problems arose, and appellant and the children returned to Warner-Robbins, Georgia on or about January 22, 1977. Appellee filed his petition for dissolution of marriage on February 8, 1977. In his case, appellee recited, among the standard allegations, that his wife was the proper party to have custody of the children; that she was capable of working and did not require maintenance; that they had acquired a small amount of marital property and several debts; and that appellant's parents had given the parties various items of personal property which should be restored to his mother and father.

Based upon proper affidavit as to appellant's nonresidency, the circuit clerk designated a warning order attorney to notify the wife as to pendency of the action, which resulted in a reply from an attorney in Georgia making certain inquiries as to Kentucky jurisdiction in divorce matters. Appellant was never subject to the circuit court by either personal service or entry of appearance.

After an unreported hearing, the trial court entered findings of fact and conclu-

sions of law to the effect that the court had jurisdiction "of all issues raised by the pleadings" and based thereon, dissolved the marriage and awarded the custody of the children to the wife and ordered appellee to pay $80.00 per month per child in spite of the fact that he was unemployed. The court then required Julian Gaines to pay two loans to banks in Georgia in the total amount of $2,681.65 but allowed him a credit of $1,340.82 against the child support. Other conclusions were entered to the effect that Amanda, having sufficient estate of her own, was not entitled to maintenance. The court then restored to appellee's father certain enumerated items of household furnishings and ordered Amanda to return to Mr. Gaines, Sr. a ladies gold pocket watch and a fur coat. On the other hand, the court awarded certain items of personalty to the wife (including a 1968 Ford Thunderbird automobile) part of which Amanda must have taken to Georgia while others remained in Kentucky, for the Gallatin Circuit Court went on to mandate that Julian could properly refuse to release such personalty as he had that had been awarded to Amanda until she returned the watch and fur coat to Julian's father. The balance of furniture and appliances were given to appellee, and he and his wife were to divide certain wedding gifts. All remaining debts were to be paid by the husband.

Amanda filed a motion by way of special appearance, to set aside the entire judgment except the order of dissolution upon the ground that the court lacked jurisdiction over her and the children. The motion was overruled and she appeals.

Jurisdiction of a circuit court to enter decrees concerning child custody is governed by KRS 403.260 from which we quote the following pertinent sections:

(1) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) This state is the home state of the child at the time of commencement of the proceeding; or

(b) It is in the best interest of the child that a court of this state assume jurisdiction because:

1. The child and his parents, or the child and at least one (1) contestant, have a significant connection with this state; and

2. There is available in this state substantial evidence concerning the child's present future care, protection, training, and personal relationships; or

(c) The child is physically present in this state; and

1. Has been abandoned; or

2. It is necessary in an emergency to protect him because he has been subjected to or threatened with mistreatment or abuse or is neglected or dependent; or

(d) 1. No other state has jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), or (c) of subsection (1), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine custody of the child; and

2. It is in his best interest that the court assume jurisdiction.

(2) Except under paragraphs (c) and (d) of subsection (1), physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on the court of this state to make a child custody determination.

(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

Dissecting this statute, we observe that custody jurisdiction is granted if Kentucky is the home state of the minors at the time of commencement of the action. The affidavit for warning order recites that appellant was a resident of Georgia although neither that document nor the complaint mention the residency of the children. On the other hand, the conclusions of law set forth that the appellee had visitation rights with his offspring, provided he bore the

expense of transporting them from their home to his residence and return. It cannot be argued that Kentucky was the home state either at the commencement, during pendency or upon the conclusion of this cause at the trial court level, and apparently the court recognized this fact.

We are not unaware of the language of *Freeman v. Freeman*, Ky., 547 S.W.2d 437, 441 (1977) to the effect:

> We note that the 1976 General Assembly by amendment to KRS 403.260 deleted the provisions which in the absence of the extraordinary circumstance provided for requires a period of six months to confer jurisdiction as the child's "home state." KRS 403.260 otherwise remains as enacted in 1972. We are of the opinion the philosophy of the Act necessitates some period of time before this state becomes the "home state" of the child. Without some time period, the rest of the Act does not make sense. We are not advised whether the General Assembly deemed the six-months period too short or too long. In order to give effect to the Act, we feel that it will be incumbent upon this court in an appropriate case to fill the vacuum and construe the time period necessary to give effect to the spirit of KRS 403.260.

Although we agree that the "act" does not make sense without some time period being enunciated, nevertheless, none is provided by either legislative enactment or judicial fiat, and it is not within the province of this court to implement statutes especially where a provision existed and was subsequently deleted by the General Assembly.

■ It has been held that there must be maximum rather than minimum contact with the state in order to gain jurisdiction of custody matters. *Turley v. Griffin*, Ky., 508 S.W.2d 764 (1974). In the case before us, there was no contact with the state upon the commencement of this action, so there could be no jurisdiction obtained under KRS 403.260(1)(a). For that matter, during the entire marriage and lives of the children, the parties resided in this Commonwealth but eleven months.

■ Turning to subsection (b) 1 and 2 of the same statute, we note that the Gallatin Circuit Court would have been the proper forum if it would have been in the best interests of the children *because* one or both of the parents *and* the children had a significant connection with the state *and* there was available herein substantial evidence concerning the children's present future care, protection, training and personal relationships. Even though one parent had a significant connection in Kentucky, this factor must be considered along with the availability of substantial evidence of the children's welfare, and if any there might have been, it does not appear in the record before us, nor does the trial court make any findings or conclusion in this regard. So we have nothing upon which we can conclude that jurisdiction was afforded under KRS 403.260(1)(b) 1 and 2. Moreover, the purpose of those subsections is to limit jurisdiction rather than proliferate it. *Turley supra*.

KRS 403.260(1)(c) 1 and 2 have no application, for these sections are applicable to abandonment or emergency situations where the child is present in the Commonwealth.

■ Appellee urges that since appellant had not resumed residence in Georgia for the jurisdictional period of time (six months —Ga.Code § 30–107) for the purpose of commencing a divorce action, then the Kentucky court could make a custody award pursuant to KRS 403.260(1)(d) when read in the light of KRS 403.260(3). We disagree, for KRS 403.260(2) strongly implies that under subjection (1)(d) 1, physical presence is a necessity to confer jurisdiction. Our conclusion finds support in *Hawley v. Shaver*, Ky., 528 S.W.2d 669 (1975) to the effect that

> Physical presence alone is not sufficient to confer jurisdiction except under KRS 403.260(1)(c) and (d)  .    .   . .

Therefore, our interpretation of the statute is that by virtue of subsection (2) and the *Hawley, supra,* opinion, in order for a Kentucky court to be empowered to make an

award of child custody pursuant to (1)(c) or (d), the minor must be present in the state. If we reached the opposite conclusion, a situation could arise where a nonresident couple could have been wedded for many years and have had children, and then one of them having removed himself to Kentucky without the child and having remained here for six months, could file a dissolution or custody petition; and if his former state did not have a statute having prerequisites substantially in accordance with KRS 403.260(1) (a), (b) or (c), then he could gain custody absent any other issue such as a constitutional prohibition.

■ Visitation with minor children may be granted to the parent not having custody, and having concluded that the court was without jurisdiction to award custody, then it was in a similar position regarding visitation and accordingly, we must reverse so much of the judgment as pertains to appellee's privilege of visitation.

The matter of that portion of the court's judgment dealing with support payments is next put in issue. Appellant argues that if the court was without jurisdiction to make an award of custody, it was in a similar position regarding support. KRS 403.210 invests the power to require either or both parties to pay a reasonable amount for the support of the children. Appellee invoked the forum of the Gallatin Circuit Court and when he did so, he alleged that appellant was a fit and proper person to retain custody. He knew or should have known the resources of his wife out of which to provide for their children and of his obligation or co-obligation to maintain them. He is presumed to be aware that whether his family was before the court or not, he was under a duty to see to it that his offspring were clothed with the necessities of life regardless of where they might reside.

■ In this regard, the court entered an in personam order requiring appellee to perform an act, namely, make payments, which it had the power and jurisdiction to do. We know of no reason why the children had to be within the state in order for the trial court to direct their father to support them

in view of the fact that he is the one who invoked the jurisdiction.

■ Having resolved that the order directing appellee to pay child support was proper, we now direct our attention to that segment of the judgment which allows him a set-off or credit for one half of the two Georgia bank loans he was directed to pay against those support payments. In essence, what the circuit court has done is to say to appellant, you do not have to repay the lending institutions but when your former husband liquidates these debts, or while he is doing so, the money for the maintenance of the children is suspended. From that point of view, the Gallatin Circuit Court is in effect entering an in personam judgment against appellant, for during such period of time as it requires Julian to reimburse one half of the loans, Amanda is chargeable with 100% of the child support. It is acknowledged that the court can order either or both parties to provide for the minors, but it could only make such demand upon appellant if she were before the court. Professor Petrilli, in his volume on Kentucky Family Law (§ 27.4 at 492) maintains that the right of support belongs to the child, and we can conceive of no reason why a portion of a debt of one of the parents should be allowed as a set-off against those sustenance payments. Our conclusion finds support in the logic of the California courts in *Williams v. Williams*, 8 Cal.App.3d 636, 87 Cal.Rptr. 754 (1970), when it denied a husband's set-off of his wife's portion of the net deficit resulting from the operation of a community property apartment house against child support payments, for the reason that such support was not an ordinary debt but rather a court-imposed parental duty, and for further reason that the obligation resulting from the deficit was that of the wife and not the child's. This jurisdiction has always placed the immediate welfare of the offspring first regardless of whatever equitable adjustments should be made between the parents, *Elkins v. Elkins*, Ky., 359 S.W.2d 620 (1962) and accordingly, we will reverse the trial court's judgment in this respect.

Remaining for our consideration are the issues of jurisdiction of the court to terminate any maintenance appellant might have been entitled to and to distribute the chattels of the parties.

 Both KRS 403.190(1) concerning disposition of property and KRS 403.200(1) dealing with maintenance recognize separate actions for both subsequent to a dissolution action where one spouse was not subject to the jurisdiction of the court at the time of the original divorce proceedings. This recognition carries with it the strong implication that when neither the spouse nor the property are before the court, then no disposition can be made, but when the chattels are within the court's jurisdiction, then it can make appropriate orders dispositive thereof. On the other hand, the court cannot enter an in personam order directed to an absent litigant to do some act with reference to personalty which is either within or without the state. Our views find support in *Restatement (Second) of Conflict of Laws* § 60 (1971) to the effect:

> A state has power to exercise judicial jurisdiction to affect interests in a chattel in the state, which is not in the course of transit in interstate or foreign commerce, although a person owning or claiming an interest in the chattel is not personally subject to the judicial jurisdiction of the state.

Moreover, at § 77(2) of the same *Restatement*, we note that:

> A state may not exercise judicial jurisdiction to absolve one spouse from any duty of support he may owe the other spouse in the absence of personal jurisdiction over the other spouse.

Based upon these principles, we must reverse so much of the judgment as denies Amanda maintenance and makes disposition of any chattels not within the jurisdiction of the court or orders appellant to return such personalty. On the other hand, we affirm that portion of the trial court's judgment distributing those items of personal property that had their situs in this Commonwealth.

We assume that when appellee filed his petition on February 8, 1977, alleging that the parties had separated on January 22, 1977, that he meant they had lived together prior to this last mentioned date. If this is true, recalling that there is no transcript of evidence, we suggest that the trial court's finding of fact reciting that "the parties have lived apart continuously for more than 60 days prior to the filing of the petition" be amended to reflect the actual facts.

The judgment is affirmed in part and reversed in part with directions that the circuit court enter orders in conformity with this opinion.

All concur.