Larry D. IRBY, Appellee,

v.

Maxine IRBY, Appellant.

No. 53318.

Court of Appeals of Oklahoma,
Division No. 2.

April 21, 1981.

Released for Publication by Order of
Court of Appeals May 28, 1981.

---

Maurice E. Lampton, Sapulpa, for appellee.

W. Creekmore Wallace, II, Sapulpa, for appellant.

BRIGHTMIRE, Judge.

The question raised is whether the court has the power to terminate child support payments upon finding that the custodial parent unjustifiably refuses to honor the payor's decretal right of child visitation. The trial court held that it did have and as a result denied the custodial parent's request for a judgment against the noncustodial parent in an amount equal to the sum of the payments excused by the court. The woman appeals. We affirm.

## I

The parties were divorced on September 6, 1974. Defendant, Maxine Irby, was granted custody of the couple's three-year-old twin boys subject to the father's "right of liberal visitation privileges at reasonable times and hours." And, he was ordered to pay $100 per month for their support.

On May 12, 1976, the father moved the court to modify the decree by vacating the order requiring him to pay child support until such time as the mother returned the children to the jurisdiction of the court. The allegation was that the mother had, without permission of the court, removed the twins to California and then Texas, thus depriving the father of his visitation rights. Notice that this motion would be heard on May 26, 1976, was served on the mother in San Antonio, Texas, on May 14 by registered mail. Although not in the record, the court evidently entered an order June 14, 1976, vacating the earlier child support order because on June 17, 1976, a motion was filed on behalf of the woman reciting that such an order was made on June 14 and that it should be set aside "for the reason

that through inadvertence and mistake on the part of counsel, he was not present at the hearing ... and the default rendered on that date is contrary to law and void on its face and a violation of defendant's rights." This motion to vacate came on for hearing on September 13, 1976. Again the woman did not show up and her attorney announced he was unable to contact her to arrange for the honoring of the father's visitation privileges. The court, consequently, overruled her motion and directed the father not to pay child support until the court ordered him to do so.

On November 13, 1978, the woman filed an application asking the court to hold the father in contempt of court for failure to pay child support and to render a judgment in her favor against him for $3,400—the amount that was not paid after the June 14, 1976, order. The father's response included, of course, reference to the relief granted to him on June 14, 1976. He added that he had "attempted to learn of the whereabouts of defendant [mother], having personally gone to San Antonio and other cities in Texas where he heard she had removed said children; that he [had] contacted persons in California where he heard she was staying but was unable to learn anything other than she had the children and had resided at ... various places prior to his inquiry; that defendant still refuses to allow [him] to visit said children...."

On January 12, 1979, the citation came on for hearing. Once the evidence was in, the court found that the father was not in contempt of court nor was he indebted to the mother for any past due child support.

## II

We agree with the holding of a California case, cited by the woman, to the effect that when a custodial parent attempts to frustrate the noncustodial parent's right of visitation, the latter, though he may not for that reason ignore a child support order, may seek remedial aid of the court for the protection of his visitation privileges.[1] To

---

1. *In re Marriage of Ciganovich*, 61 Cal.App.3d 289, 132 Cal.Rptr. 261 (1976).

this end, the court has power, even without a change of condition having been shown, to transfer custody of the child or to modify an existing child support order to the extent of lifting the obligation entirely. Of course, it should be emphasized we are discussing the *power* of the court. It goes without saying that such power should be exercised with discretion predominated by concern for the child's best interest.

### III

Neither the order of July 14, 1976, nor of September 13, 1976, or the one appealed is void, or, so far as we can determine from the record, beyond the scope of sound judicial discretion.

Affirmed.

BACON, P. J., and BOYDSTON, J., concur.