Shannon Lou BROYLES,
Appellant (Defendant),

v.

Daniel Robert BROYLES,
Appellee (Plaintiff).

No. 84–290.

Supreme Court of Wyoming.

Dec. 17, 1985.

James L. Edwards of Sheehan, Stevens & Sansonetti, Gillette, for appellant.

Franklin J. Smith of Pattno-Smith and Associates, Cheyenne, for appellee.

Before THOMAS, C.J., and ROSE,* ROONEY,** BROWN and CARDINE, JJ.

ROSE, Justice.

Shannon Broyles appeals from an order of the district court terminating appellee

* Retired November 1, 1985.

** Retired November 30, 1985.

1. Section 20–2–116, W.S.1977, authorizes judicial modification of the support provisions of a divorce decree:

"After a decree for alimony or other allowance for a party or children and after a decree

Daniel Broyles' duty to provide child support pursuant to the parties' divorce decree and finding her liable for $10,300 in damages for the failure to abide by the property settlement incorporated into the decree. The district court also found that appellee owed $10,300 for past-due child support and entered judgment for that amount in favor of appellant. The court determined that the damages award offset the judgment for child support arrearages and denied recovery to both parties.

Appellant presents the following issues for review:

"I. Did plaintiff [appellee] present sufficient evidence of his right to or the value of the property claimed to sustain an award of $10,300.00 against Appellant?

"II. Did the judge err in considering sentimental value as part of the award against Appellant?

"III. Did the trial judge err in setting off the judgment for child support against the judgment for the value of the personal property which the court deemed Appellant failed to return to the Appellee?

"IV. Did the judge err in modifying the divorce decree and property settlement agreement so as to strike all further requirements for child support and insurance coverage?

"V. Did the judge err in emancipating the child from Appellee?

"VI. Did the judge abuse his discretion in failing to award attorney's fees to Appellant?"

Appellee raises an additional issue:

"[Whether] [t]he trial Court has the power, and duty when necessary, under both its equitable powers and Wyoming Statute § 20–2–116 (1977),[1] to refuse to assess child support arrearages * * *."

for the appointment of trustees to receive and hold any property for the use of a party or children, the court may from time to time, on the petition of either of the parties, revise and alter the decree respecting the amount of the alimony or allowance or the payment thereof and respecting the appropriation and payment of the principal and income of the property so held in trust and may make any decree

■ We will reverse those portions of the judgment which permit a setoff against the child support deficiency and which terminate appellee's duty to provide future child support. We will affirm the district court's finding of liability for appellant's violation of the parties' property agreement, but will remand for a hearing on the issue of damages. We will affirm the court's denial of attorney's fees. We will not address the issue raised by appellee since he has not filed a cross-appeal to this court.

### FACTS

Appellant and appellee were divorced from each other in July, 1980. The divorce decree incorporated the parties' property settlement and child-custody agreement, which agreement awarded appellant custody of the parties' minor child, subject to specified visitation rights in appellee. The agreement obligated appellee to pay child support of $200 per month, with increments over a period of four years to $275 per month. Each party retained his clothing and personal effects under the property settlement.

In the months following the entry of the divorce decree, both parties filed numerous motions seeking to enforce the child support, visitation and property provisions of the decree. Despite court orders compelling compliance with the decree, the parties continued to disregard its requirements. On May 2, 1984, appellant moved the court to order appellee to show cause why he had not contributed to the support of his child since April, 1981. In his answer, appellee admitted the alleged deficiencies in child support, but raised, as an affirmative defense, the refusal of appellant to allow him to exercise his visitation rights. In addition, appellee moved the court to hold appellant in contempt for her refusal to abide by the visitation and property provisions of the divorce decree. Appellee also filed a motion to modify the decree so as to grant him custody of his daughter or, alternatively, to suspend his child-support obligation during those times that appellant refused to permit visitation.

At the hearing, appellee testified that he had not been permitted to visit his daughter for more than three years and, for that reason, he had failed to make child-support payments amounting to $10,300. The daughter, who was 17 years old at the time of the hearing, testified that she did not wish to visit her father and that she, not her mother, had made that decision.

In support of his claim that appellant had violated the property-settlement agreement, appellee submitted a list of items, including clothing, tools, a saddle, a snow-machine, a diamond ring, and savings bonds, that appellant had not released to him after the divorce. He valued the ring at $3,000, the snowmachine at $1,700, and the bonds at $175. He also testified that he had paid obligations of appellant totaling $1,009 and that she had appropriated his share, $470, of their 1979 federal income tax refund.

Following the hearing, the court ruled that it had no authority to forgive the deficiency in child support by reason of the denial of visitation rights and entered judgment against appellee for $10,300. The court determined that appellant had violated the property-settlement agreement by retaining property awarded to appellee and by failing to pay her obligations. The court noted the difficulty in assigning a value to some of the unreturned property, but concluded that appellee should have judgment in the sum of $10,300. In entering these monetary judgments, the court ruled

> "[t]hat equity demands the above-mentioned off-setting judgments and neither party owes the other anything as of this date."

The court further determined that the daughter had emancipated herself from her father and that appellant had the financial resources to care for her. Accordingly, the court modified the divorce decree to terminate appellee's obligation to support his

respecting any of the matters which the court

might have made in the original action."

daughter in the future. Finally, the court ruled that the parties should pay their respective attorney's fees and costs.

## ISSUES PROPERLY BEFORE THIS COURT

Without taking a cross-appeal to this court, appellee raises a claim rejected by the district court: The denial of visitation rights is a valid defense to an action for child-support arrearages.

The trial court entered judgment in appellant's favor for $10,300 in past-due child support, but permitted appellee to off-set the full amount of the deficiency. Appellee urges this court to affirm the effective denial of recovery for arrearages on the ground that appellant's refusal to permit visitation with the child excused his support obligations.

■ The rules are well settled concerning matters which an appellee properly may raise in response to an appeal taken by the adverse party. An appellee need not cross-appeal to assert an alternative theory, offered to and rejected by the district court, which would support the district court's ultimate disposition of the case. *First Wyoming Bank, N.A., Rawlins v. Trans Mountain Sales & Leasing, Inc.,* Wyo., 602 P.2d 1219 (1979). Conversely, to attack the effect of the judgment, an appellee must perfect a cross-appeal to this court. *Wyoming State Treasurer v. City of Casper,* Wyo., 551 P.2d 687 (1976). We said in *Wyoming State Treasurer,* 551 P.2d at 693:

> "The controlling rule has been settled for many years. In *United States v. American Railway Express Co.,* 1924, 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087, 1093, it was said:
>
> " '* * * [A] party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, wheth-

er what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. * * *'

> "In summary, a non-appealing party may not attack the ultimate effect of the judgment below but may support it by any matter appearing in the record. The rejection of a contention, argument or theory in support of a claim does not reject the final upholding of the claim itself."

■ In the case at bar, the trial court rejected appellee's claim that the denial of visitation excused his support obligation and that no judgment for arrearages should enter against him. Appellee now seeks to alter the effect of the judgment by asking this court to reverse the district court's ruling that appellant established her claim to $10,300 for past child support. Appellee's contention, if adopted by this court, would reduce appellant's rights under the judgment while retaining his own right to recover damages. Such an issue can be raised only by a cross-appeal. Appellee has not perfected an appeal to this court and, therefore, we will not address whether the denial of visitation privileges is a defense to an action for child-support arrearages.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE AWARD FOR VIOLATION OF THE PROPERTY AGREEMENT

■ Appellant contends that the evidence was insufficient to support the trial court's finding that appellee had a right to the claimed personal property or that the value of the property justified a damages award of $10,300. When the sufficiency of the evidence to support the judgment is at issue, we have a duty to examine the evidence in a light most favorable to the prevailing party and to resolve all conflicts in the testimony and exhibits in his favor. *True v. Hi-Plains Elevator Machinery, Inc.,* Wyo., 577 P.2d 991, 996 (1978). We will not set aside the trial court's findings

of fact unless they are clearly erroneous. Id. However, findings of fact which are not supported by the evidence, contrary to the evidence, or against the great weight of evidence cannot stand. *Kvenild v. Taylor*, Wyo., 594 P.2d 972 (1979).

At the hearing in the instant case, appellee introduced into evidence a list of 28 items of property which he testified had not been released to him pursuant to the terms of the divorce decree. Appellee identified these items as his clothing or other personal effects, some of which were gifts to him or nonmarital property.

Appellant concedes that appellee had the right to possess his "clothing and personal effects" under the terms of the divorce decree. Appellant takes the position, however, that the court erred in treating all of the claimed property as appellee's "personal effects." According to appellant, the following items are more properly characterized as "household goods, appliances and furnishings" or "tack and equipment," which categories of property the decree awarded to appellant: tools, antique bookcase, handyman jack, coffee-pot collection, dictionary, bottle collection, records and tapes, campstove and lantern, dining table and chairs, wheelbarrow, and snowmobile.

We find, however, that the evidence, when viewed in a light most favorable to appellee, is sufficient to support the trial court's treatment of the property in question as the personal effects of appellee. Appellee testified that all of the property specified in his exhibit were "personal items" belonging to him. He established that he inherited the tools from his grandfather and that he owned the jack and camping equipment prior to the marriage. He testified that his grandmother loaned the parties the dining table and chairs. Under these circumstances we refuse to substitute our view of the facts for that of the trial court so as to hold that particular pieces of property were not the "personal effects" of appellee.

We turn next to the question of the sufficiency of the evidence to support the damages award of $10,300. The measure of damages for the loss or conversion of personal property is the fair market value of the property or, in the case of goods having no ascertainable market value, the actual economic value to the owner. *Shikany v. Salt Creek Transportation Co.*, 48 Wyo. 190, 45 P.2d 645 (1935). See also *Frost v. Eggeman*, Wyo., 638 P.2d 141 (1981); *Chittim v. Armco Steel Corporation*, Wyo., 407 P.2d 1015 (1965). Generally, a claimant may not recover for the sentimental or fanciful value placed on lost property such as photographs, portraits and heirlooms. *Shikany v. Salt Creek Transportation Co.*, supra; 4 Minzer, Damages in Tort Actions, §§ 37.21[2] and 37.22[2], pp. 37–54 through 37–56, 37–59 through 37–61 (1985). The burden of proving the value of lost property rests on the party seeking recovery and may be satisfied through the opinion testimony of the owner, who is presumed to have a specialized knowledge of the property. *Ely v. Kirk*, Wyo., 707 P.2d 706 (1985); *Shikany v. Salt Creek Transportation Co.*, supra; Minzer, Damages in Tort Actions, supra, § 37.01, pp. 37–5 through 37–18.

At the hearing in the instant case, the court permitted appellee to give his opinion as to the value of the claimed property. He estimated that the diamond ring had a market value of $3,000 and the snowmachine a value of $1,700. He testified that no amount of money could replace his school yearbooks and collection of photographs. He did not assign a value to the other items of personal property in question. He testified that appellant had retained $645 in proceeds from his savings bonds and federal income tax refund. He testified that he had paid appellant's debts amounting to $1,009 and offered, in support of this claim, a notice of deficiency to the parties from the Internal Revenue Service.

This evidence, viewed in a light most favorable to appellee, establishes a loss of $6,354 to appellee for property and funds retained by appellant in violation of the divorce decree and for appellee's payment of appellant's obligations. No evi-

dence in the record supports the district court's damages award of $10,300. Although appellee itemized, with some specificity, the personal property that he failed to receive after the divorce, he offered no evidence as to the value of most of this property. The finder of fact cannot be permitted to speculate concerning the value of property. *Ely v. Kirk*, supra. Nor can the court allow recovery for the sentimental value attached to photographs and yearbooks. *Shikany v. Salt Creek Transportation Co.*, supra. Since the evidence is insufficient to support the damages awarded to appellee by the district court, we will remand this case for a new hearing on the question of damages.

## SETOFF

Appellant challenges the propriety of the trial court's decision to offset the damages award against the judgment for child-support arrearages. Appellant contends that this decision permits a dispute between the former spouses to adversely affect the independent rights of the child to support.

While we have not addressed this issue previously, courts in other jurisdictions generally have held that the special nature of child-support payments precludes their reduction by way of setoff, at least where the offsetting funds were not directed to the exclusive benefit of the child. *Smith v. Rabago*, Tex.App., 672 S.W.2d 38 (1984); *Hinton v. Reynolds*, Fla.App., 442 So.2d 1111 (1983); *Gaines v. Gaines*, Ky.App., 566 S.W.2d 814 (1978). In *Smith v. Rabago*, supra, the trial judge had denied recovery to either party where the father owed $7,000 in past child support and the mother had derived $7,000 in benefits during her wrongful possession of the real property awarded to the father by the divorce decree. The Texas Court of Appeals reversed, finding this setoff between child-support arrearages and imputed rentals to be improper:

" * * * [W]e find that the offset here was improper. The judge offset child support, a payment which is *exclusively* for the benefit of the child, against rent-

als, which benefitted the mother, child, and anyone else residing on the property. Because of the special nature of child support payments, we cannot say that the demands of appellant and appellee were mutual. Further, the integrity of enforcement procedures for child support awards should not be compromised by money judgment offsets unless such offsets are exclusively applicable to the support of the child." 672 S.W.2d at 40.

In *Gaines v. Gaines*, supra, the trial court had allowed the father to offset his support obligations by the amount that he had paid to reduce the mother's debts. The Kentucky Court of Appeals found this procedure inconsistent with the rights and welfare of the child:

" * * * Professor Petrilli, in his volume on Kentucky Family Law (§ 27.4 at 492) maintains that the right of support belongs to the child, and we can conceive of no reason why a portion of a debt of one of the parents should be allowed as a set-off against those sustenance payments. Our conclusion finds support in the logic of the California courts in *Williams v. Williams*, 8 Cal.App.3d 636, 87 Cal.Rptr. 754 (1970), when it denied a husband's set-off of his wife's portion of the net deficit resulting from the operation of a community property apartment house against child support payments, for the reason that such support was not an ordinary debt but rather a court-imposed parental duty, and for further reason that the obligation resulting from the deficit was that of the wife and not the child's. This jurisdiction has always placed the immediate welfare of the offspring first regardless of whatever equitable adjustments should be made between the parents, [citation] and accordingly, we will reverse the trial court's judgment in this respect." 566 S.W.2d at 818.

■ We find the reasoning in these decisions persuasive and compatible with our long-standing position that the welfare of the child is a primary concern in cases involving support payments. *Manners v.*

*Manners*, Wyo., 706 P.2d 671 (1985); *Rose v. Rose*, Wyo., 576 P.2d 458 (1978). Child support payments are court-imposed obligations based on the parent's ability to pay and designed to meet the needs of the children of the marriage. *Manners v. Manners*, supra; § 20–2–113(a).[2] The trial court in the instant case allowed appellee to offset his past-due support obligation by the amount of damages sustained as a result of appellant's violation of the parties' property agreement. Nothing in the record suggests that appellee's property, wrongfully retained by appellant, was used for the exclusive benefit of the child, nor were the debts which appellee paid those of the child. The setoff between judgments impaired the child's right to support and was improper. Therefore, we reverse the trial court in this respect.

### FUTURE CHILD SUPPORT

The district court modified the parties' divorce decree to eliminate all further obligation on the part of appellee to support his daughter or to maintain life insurance policies for her benefit. The court based its decision on its findings that the child had emancipated herself from her father and that appellant had adequate resources to support her:

"That by the actions of [the daughter], together with the fact that she is 17 years old in her senior year of high school and her testimony concerning her father and that she has no desire to see him or visit with him in any manner the Court finds that [she] has emancipated herself from her father and her mother has the resources to take care of her \* \* \*."

The divorce decree expressly authorizes the termination of support payments upon the child's emancipation.

 This court in previous decisions has considered grounds other than emanci-

pation for the modification of a divorce decree with respect to child support. We have held that the party seeking modification must demonstrate a material or substantial change in circumstances since the entry of the decree. *Manners v. Manners*, supra; *Mentock v. Mentock*, Wyo., 638 P.2d 156 (1981). In determining the existence of a change in circumstances, the trial court must consider the resources of the parents, the needs of the child, and all other surrounding conditions. *Mentock v. Mentock*, supra. The welfare of the child is a primary concern, and the obligation of support is a continuing one. *Rose v. Rose*, supra. In deciding the propriety of the decree modification in the case at bar, we will address the issue of the child's emancipation as well as the issue of a material or substantial change in circumstances.

*Emancipation*

 The divorce decree in the instant case imposes a continuing duty of support upon appellee during his daughter's formative years:

"\* \* \* Child support payments \* \* \* shall continue until the child shall reach the age of majority, marry or otherwise become emancipated. In the event that said minor child shall choose to go to an institution of higher learning after completion of her high school education, then said child support payments shall continue for so long as said minor child is enrolled as a full time student and until said child shall reach the age of 23 years."

The provision that a child's emancipation terminates a parent's support obligation is frequently found in decrees involving the custody and maintenance of minor children. Used in this context, emancipation refers not to the child's unwillingness to visit the noncustodial parent, but to the child's establishment as a self-supporting individual,

---

**2.** Section 20–2–113(a) provides:

"In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the chil-

dren. \* \* \* On the petition of either of the parents, the court may revise the decree concerning the care, custody and maintenance of the children as the circumstances of the parents and the benefit of the children requires."

independent of parental control. *Straver v. Straver*, 26 N.J.Misc. 218, 59 A.2d 39 (1948). When a child still has a need for care, custody and maintenance, the child is not emancipated and the duty to provide support continues. *Kamp v. Kamp*, Wyo., 640 P.2d 48, 53 (1982) (Rooney, J., specially concurring, with whom Raper, J., joins).

█ The trial court in the case at bar declared the child emancipated because she is a senior in high school and refuses to visit her father. Nothing in the record suggests that the child is self-supporting or that she is outside of the control of the custodial parent. The evidence, in fact, supports a contrary conclusion, as indicated by the court's finding that the mother has the necessary resources to care for her daughter. Under these circumstances the child is not emancipated as contemplated by the divorce decree, and appellant's support obligation continues.

*Substantial Change in Circumstances*

While many older cases hold to the contrary, the modern view is that the denial of visitation rights by the custodial parent or the child does not constitute a change in circumstances which justifies the reduction or termination of the noncustodial parent's support obligation. *Hester v. Hester*, Okl., 663 P.2d 727 (1983); *Gruber v. Wallner*, 198 Colo. 235, 598 P.2d 135 (1979); *Hester v. Hester*, 59 Tenn.App. 613, 443 S.W.2d 28 (1968). The Oklahoma Supreme Court in *Hester v. Hester*, supra, 663 P.2d 727, expressly overruled *Irby v. Irby*, Okl.App., 629 P.2d 813 (1981), in which the court of appeals had held that the trial court could terminate child support payments if the custodial parent unjustifiably refused to honor the paying parent's right to visit. The Oklahoma Supreme Court reasoned:

" * * * The welfare of the child is paramount, and the duty of a non-custodial parent to support his or her child is contingent upon the needs of the children. It is not dependent upon the opportunity of the parents to exercise visitation privileges. Whether the children refuse to see the non-custodial parent, either on their own volition or as a result of the explicit or implicit urging of the custodial parent, there is no justification in subjecting the children to possible hardship because of the interference of the custodial parent. A minor child cannot waive the right to support and refusal of the child to visit the non-custodial parent does not release the parent from the obligation to make support payments pursuant to the decree of divorce. The duties of support and visitation are not interdependent and should be separately enforced.

"Visitation is primarily for the benefit of the child, and ordinarily a support order must be paid even if the custodial parent wrongfully denies the non-custodial parent's right to visitation. The custodial parent's misconduct cannot destroy the child's right to support, nor may child support payments be used as a weapon to force a child's visitation with a non-custodial parent. The duty to support one's minor child is a continuing obligation. Entitlement to child support is not contingent upon visitation rights." 663 P.2d at 728–729.

In *Gruber v. Wallner*, supra, the Colorado Supreme Court held that violations of visitation provisions in a custody decree cannot relieve a parent of his support obligation. The court relied on the following analysis found in its companion case of *County of Clearwater, Minnesota v. Petrash*, 198 Colo. 231, 598 P.2d 138, 139–140 (1979):

"We are of the opinion that the better reasoned view is that a child's right to support is unaffected by the misconduct of his parents. 'Certainly the dissensions of the parents shall not deprive their children of the right to support commensurate with the (parents') means and station in life.' *McQuade v. McQuade*, [144 Colo. 11, 354 P.2d 597 (1960)]. When matters concerning children appear before the courts, the welfare and best interests of the child are of paramount importance. [Citations.] A parent's right to the company and affection of his child is of great value, *Reiter*

*v. Reiter*, 225 Ark. 157, 278 S.W.2d 644 (1955), and an aggrieved parent is not without remedies to ensure compliance with custody orders. [Citations.] But when a child is in need of support, questions relating to custody are immaterial. *Reiter v. Reiter*, supra."

While we have not considered previously the identical issue before us in the present case, we have reversed a district court order suspending the father's future support obligations until the mother complied with the custody provisions of the divorce decree. In *Wardle v. Wardle*, Wyo., 464 P.2d 854 (1970), the mother had indicated her willingness to permit the children to visit their father during the summer months as required by the decree. Nevertheless, the trial court suspended the father's obligation to make support payments until the end of the summer, approximately eight months after the hearing. Our analysis in that case is instructive concerning the rights of the child when questions arise involving support obligations:

"We think the court was not warranted in forgiving future payments. To do so was to penalize the children. Their need was apparent from the testimony and was not in fact denied. * * *

"Apparently the trial court adopted the theory that the mother could not purge her contempt until another summer came and the mother permitted the children to be with their father. It may be that the mother would not purge her contempt until she was able to show what her future conduct would be. But she should not be punished by taking present and future support from the children. * *

 * * * * * *

"If it is deemed necessary, it would be proper for the court to reorder plaintiff to abide by the custody provisions of the original decree, consideration being given to the need or lack of need for a bond for plaintiff's compliance. In the event either party hereafter fails to abide by the court's orders, appropriate action can be taken by the court upon proper applica-

tion by the aggrieved party. This applies both to a failure on the part of the husband to make support payments and to a failure on the part of the wife to abide by provisions of the decree relating to custody." 464 P.2d at 857–858.

In light of the foregoing authority from this court and other jurisdictions, we hold that the denial of visitation rights by either the custodial parent or the child does not constitute a change in circumstances justifying the reduction or termination of the noncustodial parent's support obligation. A child's need for support and a parent's ability to pay are not related to questions concerning visitation. The welfare of the child is a primary concern, and the duty of a noncustodial parent to support his or her child cannot depend on that parent's opportunity to exercise visitation rights.

This conclusion is supported by the intent of the legislature as reflected in its adoption of the Revised Uniform Reciprocal Enforcement of Support Act (URESA), §§ 20-4-101 through 20-4-138, W.S.1977, in 1973. Section 20-4-123, W.S.1977, of that Act provides:

"In any hearing for the civil enforcement of this act [§§ 20-4-101 through 20-4-138] the court is governed by the rules of evidence applicable in a civil court action in the district court. If the action is based on a support order issued by another court, a certified copy of the order shall be received as evidence of the duty of support, subject only to defenses available to an obligor with respect to paternity or to a defendant in an action or a proceeding to enforce a foreign money judgment. *The determination or enforcement of a duty of support owed to one (1) obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court.*" (Emphasis added.)

Although this statute does not control the instant action by appellee to modify the divorce decree, the statute's policy with respect to the independent nature of support and visitation duties cannot be ig-

nored. The order of the district court modifying the divorce decree so as to terminate appellee's obligation to provide child support and insurance protection is reversed.

## ATTORNEY'S FEES

 Appellant contends that the trial court abused its discretion in failing to award attorney's fees pursuant to § 20–2–111, W.S.1977. That statute provides in part:

> "In every action brought for divorce, the court may require either party to pay any sum necessary to enable the other to carry on or defend the action * * *."

This language has been interpreted as authorizing the reimbursement of a party's attorney's fees in proceedings to modify or enforce divorce decrees, as well as in original actions for divorce. *Ulrich v. Ulrich,* Wyo., 366 P.2d 999 (1961). The trial court has broad discretion in deciding whether to award fees pursuant to this statutory provision. *Karns v. Karns,* Wyo., 511 P.2d 955 (1973); *Book v. Book,* 59 Wyo. 423, 141 P.2d 546, 167 A.L.R. 352 (1943).

 Nothing in the record in this case establishes that appellant needed the allowance of attorney's fees to enable her to carry on the action to enforce the decree or to defend appellee's action to modify the decree. She has a master's degree in special education and is employed as an educational diagnostician for the Campbell County School District. Under these circumstances, we refuse to hold that the trial court abused its discretion in denying appellant's attorney's fees under § 20–2–111, supra.

Affirmed in part, reversed in part, and remanded for further proceedings on the issue of the damages sustained by appellee.

CARDINE and ROONEY, JJ., both filed specially concurring opinions.

CARDINE, Justice, specially concurring.

Initially I was of the opinion that appellee's judgment on his counterclaim should be reduced to the amount he had proven, or $6,354. It was his burden to prove his damages. If he failed to prove more than that amount, the award should be reduced accordingly. Upon further consideration, however, I find myself in agreement with Justice Rooney's specially concurring opinion, i.e. that the remand should provide that the property listed in Exhibit 4 should be ordered returned to appellee, and, if it cannot be returned, that appellee recover whatever amount he can prove as its fair and reasonable value.

My greatest concern with the majority opinion here is that it holds that if Mr. Broyles' daughter is unemancipated, his obligation of support continues irrespective of all other considerations. This court has never decided whether a noncustodial parent can be relieved of his support obligation because a child refuses the right of visitation. Other courts have generally held that the two factors which should be considered in determining whether a noncustodial parent should be relieved of the support obligation are:

1. Whether it is the custodial parent who is preventing the visitation or is it the child alone refusing such visitation?

2. Whether the custodial parent can support the child if the noncustodial parent is relieved of the support obligation.

It is uniformly held that the noncustodial parent will not be relieved of his obligation of support if the custodial parent is unable alone to properly support an unemancipated child. *Reiter v. Reiter,* 225 Ark. 157, 278 S.W.2d 644 (1955). Instances in which the noncustodial parent has been relieved of the support obligation have been those in which the custodial parent could provide sufficient support for the unemancipated minor. *Cooper v. Cooper,* 59 Ill.App.3d 457, 16 Ill.Dec. 818, 375 N.E.2d 925 (1978); *Barela v. Barela,* 91 N.M. 686, 579 P.2d 1253 (1978); *Benum v. Benum,* 116 R.I. 641, 360 A.2d 108 (1976). In *Benum,* the court, after noting that suspension of support payments would be proper only if the needs of the child were otherwise provided for, suspended support payments for a 14-year-old child in the custody of the mother, stating:

"[I]t is within the judicial discretion of the court to suspend payments ordered for support of a minor child where said child refuses to comply with visitation rights granted to a father under a court decree * * *." 360 A.2d at 110.

See also *Snellings v. Snellings*, 272 Ala. 254, 130 So.2d 363 (1961), holding the suspension of support payments under similar circumstances to be within the discretion of the trial court. In *Barbara "M" v. Harry "M"*, 117 Misc.2d 142, 458 N.Y.S.2d 136 (1982), emphasizing the son's age and the father's limited financial means, the court held that a 19-year-old student's refusal to visit with his father justified the termination of that father's support obligation.

I suggest the better rule to be that a noncustodial parent must continue support payments unless,

 1. the custodial parent is capable of providing support for the unemancipated minor child, and

 2. the custodial parent is at fault or at least substantially involved in the unemancipated minor's refusal to afford visitation rights to the noncustodial parent.

There is obvious merit in imposing sanctions upon a custodial parent who interferes with the right of visitation, for such sanctions may result in the noncustodial parent being afforded an opportunity to see and know and visit with the child. If, however, the custodial parent does not interfere with visitation but the child alone determines that he will not visit the noncustodial parent, then not much is achieved by employing the suspension-of-payment sanction, except perhaps to punish the child. The rights of the parent and the child must coexist. If the child, of his own volition, determines not to visit the noncustodial parent, it seems that the child may have a right to those feelings. Neither the child nor the custodial parent should be punished for that choice. As the Michigan Court of Appeals said in *Henshaw v. Henshaw*, 83 Mich.App. 68, 268 N.W.2d 289, 291 (1978):

"Affection is bestowed, not bought. Family relations cannot be regulated by the clock. Obviously, any coerced companionship the defendant might compel by a cutoff of child support would be utterly devoid of the sentiments of filial love and respect whose encouragement furnished the only admissible ground for visitation in the first place."

In this case the trial court might have found that if the father's obligations for support were terminated, the child would be adequately provided for by the mother who earned $29,000 in 1984. It was clear, however, from the record that the 17-year-old daughter of the parties was an unemancipated minor child and that she alone was responsible for her refusal to visit with her father. She testified that she was afraid of her father because he had beaten her mother and that she did not wish to visit her father because he had not spent time with her during the marriage when the parties were living together. Finally, the record in the case at bar indicates that the custodial parent did not in any way interfere or refuse appellee's right of visitation with his daughter.

For the reasons stated, I concur in the opinion of the court.

ROONEY, Justice, concurring.

I only add to the majority opinion my belief that the more specific determination of that designated as personal effects in the settlement agreement and in the decree should result in a direction to deliver to appellee the items determined to be properly those of appellee with the award of damages being restricted to the value of that which is no longer available for delivery.